**GRANADO, et al., Appellants,**

v.

**MADSEN, et al., Appellees.**

**No. A14–85–706–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 5, 1987.

Rehearing Denied April 2, 1987.

John P. Holloway, Houston, for appellants.

Jay D. Hirsch, David A. Livingston, Gordon M. Carver, III, Stuart W. Lapp, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

## OPINION

### J. CURTISS BROWN, Chief Justice.

This is an appeal from a medical malpractice action brought against two physicians, Dr. Alva C. Madsen, a surgeon, and Dr. Mary P. Maddock, an anesthesiologist. Suit was brought by Luis Granado as next friend of his minor children, Luis Granado, Jr., Rosa Linda Granado, Sylvia Granado, and Angeline Granado. All the plaintiffs, the appellants, were children of the decedent, Mary Irene Granado, whose medical treatment at St. Joseph's Hospital, Houston, Texas, in September of 1972 formed the basis of this lawsuit.

In their first three points of error appellants ("the Granados") attack (i) an order striking their pleadings and dismissing with prejudice their suit against Dr. Madsen and (ii) the grant of summary judgment for Dr. Madsen. The remaining twelve points of error relate to the trial on the merits of the Granados' claims against the other defendant, Dr. Maddock. The trial resulted in a final judgment ordering appellants take nothing against Dr. Maddock.

Finding that the court abused its discretion in striking appellants' pleadings and dismissing with prejudice the suit against Dr. A.C. Madsen, we reverse and remand as to appellee Dr. Madsen. We affirm as to Dr. Mary P. Maddock.

On September 8, 1972, Dr. A.C. Madsen performed an elective tonsillectomy on Mrs. Granado. The evening before her surgery Dr. Herman Barnett, an anesthesiologist, saw Mrs. Granado. (Dr. Barnett, *now deceased, has never been a party to this law suit.*) During that conference Mrs. Granado signed a standard consent form used by the hospital entitled "Authorization for Surgeon to Operate." The form stated that she certified that Dr. A.C. Madsen had explained the necessity, advantages and possible complications of the tonsillectomy to her and she authorized him to perform the surgery "under any anesthetic deemed advisable." During the surgery Dr. Mary P. Maddock, the anesthesiologist, administered the anesthetic Halothane to Mrs. Granado. The patient was discharged from the hospital on September 10th but was readmitted one week later, complaining of symptoms indicating a urinary tract infection. In the hospital she became progressively more jaundiced and mentally confused, lapsing into a coma a few days before her death on September 25, 1972. The autopsy reported the cause of death as "massive hepatic necrosis ... representing an ideosyncratic reaction to the recent Halothane anesthesia" or possibly "due to fulminating viral hepatitis."

The lawsuit, originally filed in 1974, was still pending in 1985 when the trial court entered a pre-trial order, pursuant to Rule 166 of the Texas Rules of Civil Procedure. The order required that the plaintiffs file any amended pleadings on or before February 25, 1985, and the defendants file any *amended pleadings on or before March 4, 1985.* Nine days after the defendants' deadline and without leave of the court, Dr. Madsen filed a motion for summary judgment. The Granados were permitted to respond to the motion. Without leave of the court they also filed "Plaintiffs' First Supplemental Petition," asserting two additional theories of liability. Dr. Madsen immediately filed a motion to strike, praying that the court strike "Plaintiffs' First Supplemental Petition" or, alternatively, continue the trial scheduled to begin in less than a week. The motion to strike was considered together with the motion for summary judgment on April 26th. The trial court's docket sheet notes that on April 26th the motion to strike was granted and "Order Signed" and that defendant Dr. Madsen's motion for summary judgment was granted, Dr. Madsen was dismissed and "Order to follow."

The language of the Order Granting Defendants' Motion to Strike is significant. After the customary sentence stating that the "Motion ... to Strike the 'First Supple-

mental Petition' of the Plaintiff" came on to be heard and should be granted, the court actually ordered that:

> [T]he pleadings of the Plaintiff, LUIS GRANADO, AS NEXT FRIEND OF LUIS GRANADO, JR., ROSALINDA GRANADO, SYLVIA GRANADO, AND ANGELINA GRANADO, MINORS, shall be striken, that Plaintiffs' action against Defendant A.C. MADSEN, M.D., shall be and hereby is dismissed with prejudice, and judgment is hereby rendered in favor of the Defendant of the cause of action filed against him by Plaintiff.

Clearly, this order did much more than grant the prayed for relief of striking the supplemental petition; it struck *all* pleadings against Dr. Madsen and dismissed with prejudice the Granados' cause of action against him.

The Granados proceeded to trial April 30th against the remaining defendant, Dr. Maddock. After the jury trial, the court rendered a take nothing judgment, and the Granados timely filed their motion for new trial. On August 12th, during the period of the trial court's plenary power following the motion for new trial, the trial judge signed an order purporting to grant summary judgment in favor of Dr. Madsen.

Interesting questions of law arise from the trial court's attempted grant of mutually exclusive remedies. Our initial inquiry is to determine which order of the trial court controls this appeal.

On April 26th only *one* order was signed: the order dismissing plaintiffs' case against Dr. Madsen. By the time of trial, April 30th, the order had not been reformed or withdrawn and no order granting summary judgment to Dr. Madsen had been signed. Therefore, the only order that prevented the Granados from going to trial against Dr. Madsen on April 30th, was the dismissal order. At trial time only the docket notation indicated that the trial court had once considered granting Dr. Madsen's motion for summary judgment. The law in Texas is well established that a docket entry may not impeach the trial court's order.

*N–S–W v. Snell,* 561 S.W.2d 798, 799 (Tex. 1977). To be effective a trial court order must be entered of record. A docket entry cannot be accepted as substitute for such record nor can a docket entry change or enlarge judgments or orders of the court. *Hamilton v. Empire Gas & Fuel Co.,* 134 Tex. 377, 110 S.W.2d 561, 566 (1937).

On August 12th, the trial court signed an order purporting to grant summary judgment in favor of Dr. Madsen. The order was of no effect for two reasons. First, on that date the plaintiffs had no live pleadings asserting claims against Dr. Madsen and, hence, there existed no cause of action against which summary judgment could have been granted. Second, the order signed by the trial judge purported to grant summary judgment against one who was not a party to the suit, the plaintiffs' father and next friend. The order stated: "It is, therefore, ORDERED, ADJUDGED and DECREED that the Plaintiff LUIS GRANADO, take nothing over and against the Defendant, ALVA C. MADSEN, M.D., and that ALVA C. MADSEN, M.D., go this day with his costs." The order failed to name the actual plaintiffs. Upon application of either party, an omission or misrecital of any name or names may be corrected. Tex.R.Civ.P. 317. No such application was made. Therefore, the record before this court reflects that summary judgment was not entered against the plaintiffs. The summary judgment order was nullity. We therefore find that the order of the court striking the Granados' pleadings and dismissing with prejudice their cause against Dr. Madsen to be the controlling order of this appeal.

In their first point of error the Granados complain that the trial court erred and abused its discretion in sustaining Dr. Madsen's motion to strike and in dismissing with prejudice the Granados' suit against him. We agree.

In deciding whether a trial court abused its discretion it is the duty of the appellate court to determine whether the trial court acted with reference to guiding

rules and principles or whether the court's action was arbitrary and unreasonable. *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex.1986); *Downer v. Aquamarine Operations, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). The appellate court cannot substitute its judgment for that of the trial court. *Yowell*, 703 S.W.2d at 635. Dismissal when issues are disputed without affording the parties their right to a full trial on the merits is an extraordinary sanction allowed only in limited circumstances. Appellees Dr. Madsen argues that Rule 215 of the Texas Rules of Civil Procedure gives the trial court discretion to dismiss a cause of action for failure of a party to comply with a court order. The rule cited by the appellees is limited to sanctions for abuse of discovery orders and has no application to the issue of this case. Plaintiffs' First Amended Petition, alleging seven theories of liability, were properly before the court. No "guiding rules or principles" justify the dismissal of that pleading as a sanction for attempting to supplement those theories without leave of court after the court ordered deadline. The action was arbitrary and unreasonable. We hold that the trial court erred and abused its discretion in dismissing the Granados' cause of action against Dr. Madsen. Consequently, we reverse the trial court's summary dismissal, order that the trial court reinstate Plaintiffs' First Amended Petition and Plaintiffs' First Supplemental Petition, and remand the case for trial on the merits.

■ Appellants' second and third points of error complain of the order purporting to grant summary judgment in favor of Dr. Madsen. Having found the order to be a nullity, we need not address these points. However, we have compared Dr. Madsen's motion for summary judgment and supporting affidavit with Plaintiffs' First Amended Petition, and we do note that Dr. Madsen failed to negate one of the Granados' seven original claims: that the doctors "[failed] to institute immediate therapy for the liver damage at a time when they [sic]

defendants knew or should have known that the patient was experiencing symptoms of liver involvement...." Dr. Madsen failed to show that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law as required by Rule 166-A of the Texas Rules of Civil Procedure.

Appellants' fourth through fifteenth points of error address the trial of claims against the anesthesiologist Dr. Maddock. Appellants allege the trial court erred and abused its discretion in framing the jury charge and in denying a new trial.

■ At the close of testimony the trial court submitted a special issue inquiring whether Dr. Maddock failed to obtain informed consent from Mrs. Granado for the anesthetic procedures. Informed consent was defined for the jury as "the consent given by a patient to whom such risks incident to anesthetic procedures with Fluothane (Halothane) had been disclosed as would be disclosed to the patient by an anesthesiologist of ordinary prudence under the same or similar circumstances." The jury answered the issue, "We do not."

Appellants contend in their fourth point of error that they were denied a correct submission of the term. The more detailed definition offered by the appellants includes the "prudent anesthesiologist" standard of the submitted definition but continues with additional requirements, i.e. that the information be such that it would "enable the patient to make a knowledgeable, intelligent, and fully informed decision to either accept the suggested anesthetic procedures under the circumstances or to refuse the suggested anesthetic procedures under the circumstances." Appellants argue that the definition contained in the court's charge improperly focused the jury's attention upon what information an anesthesiologist would normally disclose rather than on what information a patient would require to make a knowledgeable decision.

The injuries forming the basis of this lawsuit occurred before the effective date

of the Medical Liability and Insurance Act. Tex.Rev.Civ.Stat.Ann. art. 4590i § 1.01 et seq. (Vernon Supp.1977). In the absence of legislative enactment the case is governed by the Texas common law as it existed in 1972. *Smith v. J. Weingarten, Inc.*, 120 S.W.2d 878, 881 (Tex.Civ.App.—Beaumont 1938, writ dism'd). Appellants' reliance upon the duty imposed by the Medical Liability and Insurance Act and on subsequent decisions that construe the act is misplaced.

For suits arising prior to this legislative enactment, the landmark case in Texas on informed consent is *Wilson v. Scott*, 412 S.W.2d 299 (Tex.1967). The Court in *Wilson* acknowledged that physicians have a duty to make a reasonable disclosure of risks incidental to medical procedures. This duty to obtain a patient's informed consent is based upon the patient's right to sufficient information for him to give informed consent to or refusal of a medical procedure. *Id.* at 301. This portion of *Wilson* which appears to support appellants' requested definition is urged by appellants. However, appellants' argument ignores the remainder of the *Wilson* opinion. There the Court did not define adequate information in terms of what the patient would require or what a juror would disclose to the patient under the same or similar circumstances. Since the content of the disclosures should depend upon both the nature of the medical problem and the particular patient, expert medical evidence is required in each case to establish a standard by which a physician's conduct can be tested. The Court held that "the plaintiff had the burden to prove by expert medical evidence what a reasonable medical practitioner of the same school and same or similar community under the same or similar circumstances would have disclosed to his patient about the risks incident to a proposed diagnosis or treatment...." *Id.* at 302. The definition of informed consent submitted to the jury is parallel to the language of *Wilson.*

Appellants further urge that the definition submitted by them and refused by the trial court was approved in *Gaut v. Quast*, 505 S.W.2d 367 (Tex.Civ.App.—Houston [14th Dist] 1974, *writ ref'd n.r.e.) per curiam*, 510 S.W.2d 90 (Tex.1972). The appellants' reading of *Gaut* is incorrect. There, as here, the plaintiff was the appellant. The complaint of the plaintiff/appellant before the appellate court was not the propriety of the definition of informed consent used by the trial court but whether plaintiff was entitled to submission of additional independent issues on fraud. Nowhere in the opinion does the court approve or disapprove of the trial court's definition.

We hold that the trial court did not err in its submission of the definition of informed consent. Appellants' fourth point of error is overruled.

 In points of error five through seven appellants allege that the trial court erred in refusing certain requested instructions. Two of these described the duty of the anesthesiologist as requiring disclosure to the patient of the risks that could influence a reasonable person in making a decision to give or withhold consent. Such instruction is a misstatement of the law of Texas governing this case. As discussed earlier in this opinion, the standard by which the anesthesiologist's conduct is measured is not what information would influence a reasonable person but rather what information would a reasonable physician of the same school disclose under same or similar circumstances. *Wilson v. Scott*, 412 S.W.2d 299, 302 (Tex.1967). The "reasonable person" standard has only become the law of Texas since passage of the Medical Liability Act in 1977. A third refused instruction advised the jury that the surgeon does not have the duty to obtain the patient's informed consent. This statement cannot be supported by Texas law. The duty of physicians and surgeons to obtain a patient's informed consent is well established in Texas. *Id.* at 301. To complain on appeal of the trial court's refusal to include an instruction in the charge the complaining party must have requested an instruction which is a substantially correct

statement of the law. Tex.R.Civ.P. 279. *J.V. Harrison Truck Lines, Inc. v. Larson,* 663 S.W.2d 37, 41 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.)

■ The two remaining instructions submitted by the appellants and refused were designed to inform the jury that where the duty to obtain informed consent has been delegated by the administering anesthesiologist to another anesthesiologist, the first anesthesiologist remains responsible to the patient. These instructions would constitute an impermissible comment on the weight of the evidence in that each presumes that the duty was delegated and implies that such procedure was improper, ignoring evidence presented at trial that Dr. Maddock spoke with Mrs. Granado before surgery and that it is standard practice in Houston for anesthesiologists to work as teams. The Texas Rules of Civil Procedure require that the trial court shall not comment directly on the weight of the evidence in its charge. Tex.R.Civ.P. 277. The trial court did not err in refusing the requested instructions. Appellants' points of error five, six and seven are overruled.

■ Appellants assert in their eighth point of error that the trial court erred in refusing their requested issues on Dr. Maddock's negligence in failing to inform Mrs. Granado of the risks involved in the administration of Halothane and the availability of alternative anesthetic procedures. Appellants contend that the negligence theory is a distinctly different legal theory from failure to obtain the patient's informed consent. We disagree. In special issue number one the jury was asked to determine whether the anesthesiologist failed to give Mrs. Granado the information a prudent anesthesiologist under the same or similar circumstances would give. A negligence issue in the charge would but cover another shade of the same ultimate issue and is improper. *Texas & Pacific Railway Company v. Snider,* 159 Tex. 380, 321 S.W.2d 280, 283–8 (1959). Where the trial court has submitted the controlling issues raised by the pleadings and the evidence, the appellate court shall not reverse because the trial court failed to submit various phases or different shades of the same issue. Tex. R.Civ.P. 279.

■ In their ninth point of error appellants contend that they were entitled to an issue as to whether Mrs. Granado was pregnant and whether the pregnancy was a proximate cause of her death. The question of Mrs. Granado's pregnancy was not an ultimate issue to a determination of liability. Mrs. Granado's mental and physical condition comprised part of the "same or similar circumstances" that the jury was called upon to evaluate in special issue number one; her condition was a part of the "medical evaluation of Mrs. Granado" in special issue number four and was an element of the "facts and circumstances relating to Mrs. Granado (sic) medical history and present medical condition" in special issue number ten. The trial court submitted the controlling issues and was not required to submit any additional phase or shade of those issues. *Prudential Insurance Company of American v. Tate,* 162 Tex. 369, 347 S.W.2d 556, 559 (1961). The point is overruled.

In reply to special issues one, four, and ten the jury failed to find that (1) Dr. Maddock failed to obtain the informed consent from Mrs. Granado for the anesthetic procedures; (2) Dr. Maddock failed to obtain an adequate medical history and medical evaluation of Mrs. Granado before administering the anesthetic; and (3) Dr. Maddock was negligent in not using an alternative anesthetic procedure under the circumstances. In points of error eleven, thirteen, and fifteen appellants urge that the jury's negative responses to these issues are contrary to the great weight and preponderance of the evidence.

Where the appellants' challenge is that the failure of a jury to find on an issue is against the great weight and preponderance of the evidence, then this court must consider all the evidence. *Pool v. Ford Motor* Co., 715 S.W.2d 629, 635 (Tex.1986).

On the issue of informed consent appellants had the burden to establish the medical standard for anesthesiologists and then to prove that Dr. Maddock's conduct failed to meet that standard. Appellee admitted that she did not advise the patient of the risk of liver damage from Halothane. That risk was variously estimated by expert testimony to be between one incidence in 3,000 to one in 40,000. Appellants' expert testified that a patient such as Mrs. Granado should be advised of such risk. The witness was a board certified psychiatrist and a biochemist. He was not an anesthesiologist and had never practiced anesthesiology. His only participation in an anesthetic procedure was the administration of ether in 1947 as an intern. On the other hand, appellee presented the expert testimony of two anesthesiologists who were practicing anesthesiology in 1972 and had administered Halothane many thousands of times. The first testified that the risks of injury from Halothane was less than that with other anesthetics available in 1972. Unless a patient specifically inquired, it was not standard practice to discuss those risks. Presenting a chronicle of all possible injuries was more likely to create anxiety than to provide real help to the patient. The second anesthesiologist to testify for Dr. Maddock, a Houston physician, stated that Halothane was the preferred anesthetic in 1972; it was not standard practice of prudent anesthesiologists to discuss with patients the risks of liver damage related to Halothane, and it was standard practice for anesthesiologists practicing in a group to have one member of the anesthesiology team visit the patient the night before surgery to take the patient's medical history, to tell the patient who would administer the anesthetic and to explain the procedure. Dr. Maddock also testified as an expert, stating that it was standard practice among anesthesiologists practicing in Houston to work as a team and that it was not standard practice to advise a patient of the risk of an adverse reaction occurring less than one percent of the time. Finally, the evidence presented at trial included the hospital form, signed by Mrs. Granado, in which she consented to the use of "any anesthetic deemed advisable." From a review of the record we find that the refusal of the jury to find that Dr. Maddock failed to obtain Mrs. Granado's informed consent is not against the great weight and preponderance of the evidence.

With respect to the issue on Dr. Maddock's failure to obtain an adequate medical history and medical evaluation, the evidence urged by appellants is the testimony of Dr. Maddock that she did not personally take the patient's medical history the night before surgery, that the history taken by her associate anesthesiologist did not tell her what anesthetics had been used previously, and that she did not determine that Mrs. Granado was pregnant. The medical experts agreed that a prudent anesthesiologist would not give a general anesthetic to a pregnant patient except in an emergency. Dr. Maddock's expert acknowledged that Mrs. Granado's records when she was readmitted to the hospital following the tonsillectomy indicated she was pregnant. In support of the jury's negative response to the special issue, there was the testimony of Dr. Maddock that she met with the patient before surgery and specifically inquired as to allergies, medical illnesses, present medication and previous history of liver disease. She reviewed the patient's hospital records and the medical histories taken by Dr. Madsen and by her associate anesthesiologist. The existence of Mrs. Granado's pregnancy was controverted by the testimony of Dr. Madsen and the pathologist who performed the autopsy. In the light of the testimony of these doctors, we hold that the jury's response is not against the great weight and preponderance of the evidence.

In support of the allegation that Dr. Maddock should have chosen a local anesthetic instead of a general anesthetic, appellants argue that the patient was pregnant, that on at least three other occasions she had been administered Cyclopropane,

an anesthetic similar to Halothane in its effect on the liver, and that the manufacturer of Halothane warned against repeated use of any drug which causes liver problems. The controverting evidence of a possible pregnancy has been amply addressed. With respect to the choice of anesthesia used, Dr. Maddock and her experts testified as to the dangers of a local anesthetic and the strong preference among anesthesiologists for a general anesthetic, specifically Halothane. As for the possible cumulative injury from using Halothane more than a year after the last administration of Cyclopropane, the appellants' own expert admitted that the use of Cyclopropane was too remote in time to have had an effect. Other expert testimony showed that there was no relationship between the use of Halothane and prior exposure to Cyclopropane. We find that the refusal of the jury to find that Dr. Maddock was negligent in her choice of anesthetic was not against the great weight and preponderance of the evidence. Appellants' eleventh, thirteenth and fifteenth points of error are overruled.

 In their tenth and twelfth points of error appellants assert that the trial court erred in denying a new trial because the uncontroverted evidence and judicial admissions of Dr. Maddock established as a matter of law that she failed to obtain the patient's informed consent and failed to obtain an adequate medical history and medical evaluation of the patient. In resolving points presented "as a matter of law" the reviewing court will consider only the evidence that supports the finding of the trial court. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1952). Evidence in support of the findings of the jury on both the informed consent issue and the medical history and evaluation issue has been recited in detail earlier in this opinion. Moreover, Dr. Maddock's statement that she did not personally advise Mrs. Granado of the risks of Halothane as an anesthetic does not in and of itself satisfy appellants' burden as a matter of law. The statement

does not prove that the doctor's conduct did not conform to the standard of disclosure that would be exercised by an anesthesiologist of ordinary prudence under the same or similar circumstances. Appellants' "matter of law" points ten and twelve are overruled.

 Finally, appellants contend that the jury's finding that the Granado children suffered no monetary damage by the loss of their mother was so contrary to the undisputed evidence as to establish that the appellants did not obtain a fair and impartial trial. It is well established in Texas that where the jury has found no liability the issue of damages becomes immaterial. *Southern Pine Lumber Co. v. Andrade*, 132 Tex. 372, 124 S.W.2d 334, 335 (1939). Any error in the finding is harmless and is not cause for reversal. Tex.R.Civ. p. 434. Thus, we do not rule on this point of error.

Judgment as to defendant Dr. Madsen is reversed and remanded. Judgment as to Dr. Maddock is affirmed.