**Byron K. VARME, Individually and d/b/a Trans–Oceanic Capital Corporation and Trans–Atlantic Capital Company, Appellants,**

v.

**Leonard GORDON and GFTA Trendanalysen B.G.A. Herrdum GMBH & Company, K.G., Appellees.**

No. A14–93–00913–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 28, 1994.

Rehearing Denied Aug. 25, 1994.

Scott P. Stolley, Rhonda J. Byrd, Van E. McFarland, Houston, for appellants.

Karen S. Cook, J. Eugene Clements, Evelyn V. Keyes, Houston, for appellees.

Before MURPHY, ELLIS and JUNELL,* JJ.

## OPINION

MURPHY, Justice.

This appeal comes to us from a take-nothing judgment entered in favor of appellee Leonard Gordon ("Gordon"). Appellants challenge the trial court's conditional submission of a jury question, exclusion of a fact witness's testimony, and dismissal of appellee GFTA Trendanalysen B.G.A. Herrdum gmbh & Co., K.G. ("GFTA") from the suit. Because we find the trial court did not abuse its discretion in striking the joinder of GFTA, but find error in the conditional submission of appellants' fraud cause of action, we affirm in part and reverse in part.

Gordon did not file a brief in this Court, and GFTA does not challenge the facts as set forth by appellants in their brief. The Court accordingly accepts the following facts as correct. TEX.R.APP.P. 74(f).

Appellant Varme was in the business of obtaining investors for firms seeking financial support, as president of Trans–Atlantic Capital Co. (Varme and his companies will be collectively referred to as "appellants"). In the course of this work, his company entered into a commission contract with Frontier, Ltd., through Frontier's CEO, Dr. Ed Borsage. The contract provided that appellants were to receive a 10% finder's commission if Varme located an investor or "strategic partner" which would acquire an exclusive right to use any part of Frontier's technology or services. As part of his investigation into investors, Varme contacted an acquaintance named Chris Lane, who had some expertise in the currency trading business. Lane suggested that a German trading company named GFTA might be a potential investor or strategic partner for Frontier. Lane told Varme he would forward the information about Frontier to Gordon, a former employee of GFTA, who still maintained a business relationship with GFTA. Lane passed the information about Frontier to Gordon, but made sure that Gordon was aware that appellants had a contract with Frontier.

Gordon arranged a series of meetings between Frontier and GFTA, which eventually culminated in GFTA's investing $13 million in Frontier. However, Gordon did not notify appellants of the dealings between the two companies. During the negotiations, Varme was told that there was an impending transaction negotiated by Gordon, but Frontier and Gordon agreed to keep the involvement of GFTA a secret from Varme, because Gordon did not want to have to pay appellants the full contractual commission. Instead, Borsage (Frontier's CEO) suggested that the commission contract be modified by an addendum, which provided that appellants would receive a 1% "introducer's fee" if they introduced a broker to Frontier who subsequently found an investor for the company. Based on this addendum, Frontier agreed to pay appellants $60,000 for having introduced Frontier to Gordon, who found the investor. When Varme accepted the $60,000, he signed documents releasing Frontier from any obligation to pay the 10% commission under the original contract. At that time, Borsage and Gordon specifically denied that GFTA was Frontier's investor, and Gordon told Varme that the investment was $3 million, not $13 million.

Varme subsequently found out that the investor was GFTA, the company he had originally proposed as the investor, and that the investment was actually $13 million, not

* Retired Justice William E. Junell sitting by desig-      nation of the Texas Supreme Court.

$3 million as he had been told. Alleging that Frontier (through Borsage) and Gordon had misrepresented GFTA's involvement and induced Varme to sign documents releasing Frontier from its obligation to pay appellants 10% of the investment's value, appellants brought suit against Gordon and Frontier for breach of contract, tortious interference with a contract, conspiracy, and fraud.

On October 13, 1992, appellants also named GFTA in the suit. At that time, the suit was set for trial March 1, 1993. GFTA filed a Verified Special Appearance and Motion to Dismiss for Lack of Jurisdiction, subject to the special appearance, claiming that it was a foreign corporation without a registered agent in Texas, and it had not been properly served pursuant to the Texas long-arm statute,[1] the Texas Rules of Civil Procedure,[2] or the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. Following the filing of GFTA's motion, the trial judge wrote the parties a letter in which he explained that he was not reaching the issue of the court's jurisdiction over GFTA, but was instead striking the improper joinder of GFTA. On February 17, 1993, the trial court entered an order striking the joinder of GFTA.

Appellants settled with Frontier, and the suit went to trial against Gordon. The jury found no tortious interference with a contract and no conspiracy, but because of the manner in which the jury questions were conditioned, did not reach the issue of fraudulent inducement. The trial court accordingly entered a take-nothing judgment in favor of Gordon.

In their first point of error, appellants challenge the trial court's conditioning the jury question regarding fraudulent inducement on an affirmative answer to either the tortious interference question or the conspiracy question. The first four questions submitted to the jury read as follows:

### Question No. 1

Was there a tortious interference by Leonard Gordon with the commission contract between Byron Varme and Frontier Limited that proximately caused damages to Byron Varme?

\*   \*   \*   \*   \*   \*

Answer: No

### Question No. 2

Was there a conspiracy between Leonard Gordon and Frontier Limited to breach the commission contract with Byron Varme that proximately caused damages to Byron Varme?

\*   \*   \*   \*   \*   \*

Answer: No

If you have answered Question No. 1 or Question No. 2 "Yes," then answer the following question. Otherwise, do not answer the following question.

### Question No. 3

Was such conduct, if any, a good faith exercise of Leonard Gordon's own rights equal to or greater than that of the [sic] Byron Varme?

\*   \*   \*   \*   \*   \*

Answer: [No answer]

If you have answered Question No. 3 "No," then answer the following question. Otherwise, do not answer the following question.

### Question No. 4

Did Leonard Gordon fraudulently induce Byron Varme to accept the $60,000.00 payment as full satisfaction of performance of the original obligations of the commission agreement?

\*   \*   \*   \*   \*   \*

Answer: [No answer]

Thus, the answer to the question on fraudulent inducement could only be answered if the jury found that Gordon either tortiously interfered with the contract or conspired against Varme, *and* had no good faith justification for doing so.

---

1. Tex.Civ.Prac. & Rem.Code Ann. § 17.042 (Vernon 1986).

2. Tex.R.Civ.P. 108a, entitled "Service of Process in Foreign Countries."

The trial court has broad discretion in submitting jury questions. *Mobil Chem. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974). This discretion is subject only to the requirement that the questions submitted must fairly place the disputed issues before the jury. *Blonstein v. Blonstein,* 831 S.W.2d 468, 471 (Tex.App.—Houston [14th Dist.] 1992) *writ denied per curiam,* 848 S.W.2d 82 (Tex.1992). It is well settled law in Texas that a party is entitled to an affirmative submission of all of his theories of recovery that have support in the pleadings and evidence. *Exxon Corp. v. Perez,* 842 S.W.2d 629, 631 (Tex.1992); *Ahlschlager v. Remington Arms Co.,* 750 S.W.2d 832, 835 (Tex.App.—Houston [14th Dist.] 1988, writ denied). *See also* TEX. R.CIV.P. 278 (stating it is mandatory for the trial court to submit questions raised by the pleadings and the evidence). If there is some evidence to support the submission of a question, refusal by the trial court to submit the question is reversible error. *Blonstein,* 831 S.W.2d at 471. If a conditional submission deprives a party of the affirmative submission of an issue raised by the pleadings and evidence, such conditional submission also constitutes reversible error. *See Washington v. Reliable Life Ins. Co.,* 581 S.W.2d 153, 160 (Tex.1979) (remanding for a new trial when issue raised by the evidence not reached because charge improperly conditioned); *Texas Indem. Ins. Co. v. Thibodeaux,* 129 Tex. 655, 106 S.W.2d 268, 270 (1937) (finding error when affirmative defense raised by pleadings and evidence improperly conditioned on answer to question on main cause of action).

We first find it was improper for the trial court to condition the answer to the fraud question on an affirmative answer to either the tortious interference or conspiracy question. The elements of each of these causes of action are different,[3] and each constitutes a separate theory of recovery, independent of the other. Thus, the question before us is whether the elements of fraud were raised by the pleadings and evidence.

The pleadings clearly and unambiguously raised a cause of action for fraud, alleging that the defendants misrepresented material facts with the intent of inducing appellants to sign the contract addendum for an amount of payment far less than that to which they were entitled. Appellants allege that they relied on the false representations and signed the addendum, which meant that they received far less in commissions than they should have, and suffered damages as a consequence. Our task now is to review the record to determine if there was some evidence raised at trial to support the submission of a question regarding fraud. In performing this review, we consider the evidence in the light most favorable to appellants, because if any probative evidence was raised on the issue, the issue should have been fairly submitted to the jury. *Blonstein,* 831 S.W.2d at 471.

Varme testified that he contacted Gordon, a consultant for GFTA, anticipating that GFTA would consider investing in Frontier. He testified that he was later told by Frontier that it had found an investor, but that the investment was for $3 million, and the investor was *not* GFTA. Based on these representations, Gordon and Frontier asked Varme to sign an addendum to his contract which provided that he would only receive a 1% commission, which totalled $60,000, because the investor was not one he had introduced to Frontier. Dr. Ed Borsage, the CEO of Frontier, testified that he and Gordon agreed to keep GFTA's involvement a

---

3. The elements of a cause of action for **tortious interference with a contract** are: (1) the existence of a contract subject to interference, (2) a willful and intentional act of interference, (3) such act was a proximate cause of damage, and (4) actual damage or loss occurred. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 926 (Tex. 1993). The elements of a cause of action for **conspiracy** are: (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful overt acts, and (5) damages as a proximate result. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983). The elements of a cause of action for **fraud** are: (1) a material representation was made; (2) it was false; (3) when the representation was made, the speaker knew it was false, or made it recklessly as a positive assertion without any knowledge of its truth; (4) he made it with the intention that it should be acted on by the other party; (5) the party acted in reliance on it; and (6) he thereby suffered injury. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983).

secret from Varme, and made misrepresentations to Varme about the identity of the investor and the amount of the investment. There also was some evidence in the record to the effect that if appellants were entitled to a commission on the investment, it should have been $1.3 million, instead of the $60,000 they actually received. Although Gordon testified that he never made such representations as testified to by Borsage, the question of the credibility of a witness is the jury's concern.

Thus, we have some probative evidence that fraudulent representations were made by Gordon to induce Varme to sign the contractual addendum. Because the issue was raised by the evidence, it should have been affirmatively submitted to the jury for determination of who was telling the truth about what occurred. Therefore, we hold that the trial court erred in conditionally submitting the fraud issue to the jury. A judgment cannot be permitted to stand when a party is denied proper submission of a valid theory of recovery raised by the pleadings and evidence. *Exxon,* 842 S.W.2d at 631. Accordingly, we reverse the judgment and remand the case to the trial court for a new trial. Because the case will be retried, we have no need to address appellants' second point of error regarding the exclusion of a fact witness's testimony.

However, we must address the issue of GFTA's dismissal from the suit. In his third point of error, appellant contends the trial court erred in dismissing GFTA on grounds not asserted by GFTA in its motion to dismiss for lack of personal jurisdiction.[4]

In its letter to the parties and in its order, the trial court stated that it was striking the joinder of GFTA pursuant to the

Texas Rules of Civil Procedure. A trial court is given a great deal of discretion in matters of joinder and its decision on such procedural issues will not be disturbed on appeal absent an abuse of discretion. *Allison v. Arkansas Louisiana Gas Co.,* 624 S.W.2d 566, 568 (Tex.1981); *Massey v. Massey,* 807 S.W.2d 391, 397 (Tex.App.—Houston [1st Dist.] 1991), *writ denied,* 867 S.W.2d 766 (Tex.1993). In determining whether the trial court abused its discretion, we review the record in the light most favorable to the trial court's action. *Cellular Mktg., Inc. v. Houston Cellular Tel. Co.,* 838 S.W.2d 331, 333 (Tex.App.—Houston [14th Dist.] 1992, writ denied). The trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–2 (Tex. 1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In other words, if we are able to find any authority to support the trial court's actions, we may conclude that the court did not abuse its discretion.

Appellants cite several cases, arguing that the trial court lacked the authority to *sua sponte* dismiss GFTA from the lawsuit.[5] However, the cited cases deal with the trial court's authority to dismiss disputed issues, causes of action, or an entire case. They do not apply to the trial court's striking the joinder of a party, the situation before us today. In entering his order striking the joinder of GFTA, the trial judge relied on TEX.R.CIV.P. 41, which provides in pertinent part:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped ... by order of the court ... on its own initiative at any stage of the action, before the time of submission to the jury

---

4. GFTA asserts that because it was dismissed from the suit, it is not a party to this appeal and we have no jurisdiction over it with which to consider whether the dismissal was proper. We disagree. A party may obtain appellate review of a trial court's decision made pursuant to TEX. R.CIV.P. 41 without the necessity of refiling suit against the party. *Landers v. East Texas Salt Water Disposal Co.,* 151 Tex. 251, 248 S.W.2d 731, 732 (1952).

5. *Ulloa v. Davila,* 860 S.W.2d 202, 204–05 (Tex. App.—San Antonio 1993, no writ); *Abu–Ahmad v. Shadowbrook Apartments,* 776 S.W.2d 704, 708 (Tex.App.—Fort Worth 1989), *rev'd on other grounds,* 783 S.W.2d 210 (Tex.1990); *Granado v. Madsen,* 729 S.W.2d 866, 871 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Gleason v. Coman,* 693 S.W.2d 564, 567 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Garver v. First Nat'l Bank of Canadian,* 406 S.W.2d 797, 798–99 (Tex.App.—Amarillo 1966, writ ref'd n.r.e.).

or to the court if trial is without a jury, on such terms as are just.

This rule clearly authorizes the trial court to drop a party from a suit on its own motion when the party has been misjoined. *See also Rice v. Travelers Express Co.*, 407 S.W.2d 534, 536 (Tex.Civ.App.—Houston 1966, no writ) (holding Rule 41 authorizes a court to order a severance on its own motion). Thus, if the trial court had the authority to drop GFTA for misjoinder on its own motion, the issue becomes whether GFTA was misjoined. In order to address this question, we turn to the other rules of civil procedure which apply to joinder.

■ Rule 37 provides for the inclusion of additional parties in a suit by either plaintiff or defendant, but places a limitation on such additions, cautioning that they may not be made "at a time nor in a manner to unreasonably delay the trial of the case." TEX. R.CIV.P. 37. Rule 40 governs the permissive joinder of parties, and states the general rule concerning joinder of defendants:

> All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action.

TEX.R.CIV.P. 40(a). But Rule 40 has a limitation as well, which provides that the court may "make other orders to prevent delay or prejudice." TEX.R.CIV.P. 40(b). We interpret these rules to mean that "misjoinder" can occur either when a party is joined improperly in the manner or timing of the joinder, or when a party is not a proper party to the suit.

■ It is the first of these definitions of misjoinder that applies to the case before us. Again, a defendant may be brought into a suit by the plaintiff, but such a joinder *may not delay the trial.* Rule 37. In its letter to the parties, the trial court explicitly stated:

Adding GFTA at this late date *will necessarily delay the trial* setting for many months. There are numerous preliminary jurisdictional questions, including this special appearance, and the propriety and constitutionality of service upon GFTA.... [T]he imminent trial of the primary contractual claims in this case *would be greatly delayed* by adding these different claims ... [emphasis added].

We emphasize that the trial court is given great discretion over joinder questions. *Allison*, 624 S.W.2d at 568; *Hedley Feedlot, Inc. v. Weatherly Trust*, 855 S.W.2d 826, 832 (Tex.App.—Amarillo 1993, writ denied). This discretion includes the power to make a determination that a party's joinder will delay a trial whose date has already been set. *See* Rules 37, 40(b).

■ Notwithstanding the fact that the trial court later granted a continuance which pushed the date of trial back two and a half more months, the trial court was within its discretion to order that the joinder of GFTA be stricken because of the possibility that resolution of the jurisdictional issues would delay the trial, especially when that order was entered without prejudice to refiling the lawsuit.[6] *See In re Hughes*, 770 S.W.2d 635, 637 (Tex.App.—Houston [1st Dist.] 1989, no writ) (stating that when an order does not specify that it was with prejudice, we presume it was entered without prejudice). *See also* TEX.R.CIV.P. 41 (providing that the court may drop a party on such terms as are just).

When we examine the record in the light most favorable to the trial court's decision, we find that the trial court made its decision to strike the joinder of GFTA with reference to a guiding rule—Rule 41 of the Texas Rules of Civil Procedure, which allows the court on its own motion to strike a party for misjoinder. In addition, we find that the trial court struck the joinder of GFTA because the timing of GFTA's inclusion in the suit constituted misjoinder in that it would unreasonably delay the trial of the case. Therefore, we hold that the trial court did not abuse its discretion in striking the join-

---

6. In fact, appellants admit in their brief to this Court that they were not harmed by the trial court's striking the joinder of GFTA, because they could have filed a new lawsuit against GFTA.

der of GFTA. Appellant's third point of error is overruled.