Opinion issued October 17, 2008






 
 





    





In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-07-01113-CV
____________

PAUL TURNER, Appellant

V.

PRECISION SURGICAL, L.L.C., Appellee




On Appeal from the 280th District Court
Harris County, Texas
Trial Court Cause No. 2006-51426




O P I N I O N

          Appellant, Paul Turner, appeals from a take-nothing judgment, rendered
upon a jury verdict, on his retaliatory-discharge and Sabine Pilot


 claims against
appellee, Precision Surgical, L.L.C. (“Precision”). The trial court submitted the
jury questions on Turner’s claims in the disjunctive. We determine whether the
trial court erred in doing so and, alternatively, whether any possible error was
harmful. We affirm.
                                                        Background
          Starting approximately in August 2002, Turner was employed as a sales
representative for Precision. By letter dated January 30, 2006, Turner was
discharged from his employment. 
          Turner alleged and produced evidence that in July 2005, approximately six
months before he was terminated, he was injured on the job from a slip-and-fall
accident, which broke two ribs in his lower back. Turner testified that Precision
asked him not to file for workers’ compensation and instead indicated that he
should file a claim under the company’s health-insurance plan, which excluded
claims that workers’ compensation covered. For Turner to receive coverage under
the company’s health-insurance policy, he would have had to misstate the facts of
his injury. Although Turner did not file a claim under the company’s health-insurance plan at that time, he did not expressly reject Precision’s instruction to do
so, and he did not file for workers’ compensation benefits then, either. Rather, he
decided to “tough it out.” When he reinjured his back in November of 2005, he
again discussed filing for workers’ compensation benefits with Precision, but,
according to his testimony, was again discouraged from filing, and did not then do
so, either. It was not until January 2006, after he had injured his back a third time,
that Turner finally applied for workers’ compensation benefits. It was very soon
after he had filed for workers’ compensation benefits that Precision discharged
Turner. 
          Turner contended that Precision had terminated him for refusing to engage
in the illegal activity of insurance fraud (by falsely reporting the facts of his injury
to receive coverage under Precision’s health-insurance plan), or, alternatively, in
retaliation for his having filed a workers’ compensation claim in January 2006. In
contrast, Precision presented evidence that Turner had been terminated, not as a
result of his injury, but, inter alia, due to his pattern of unreliability, dishonesty,
harming the reputation of Precision, and insubordination. Precision denied
suggesting that Turner do anything illegal, intimating that he would face trouble if
he filed a workers’ compensation claim, and firing him for these things.
          The jury trial began in November 2007. At the conclusion of the three-day
trial, the trial court gave the following charge:
Question One: Was Paul Turner discharged for the sole reason that he
refused to perform an illegal act?
 
As used in this question, an illegal act means
insurance fraud. A person commits insurance fraud if
they [sic] intentionally submit false information knowing
it to be false to an insurance company in support of a
claim. Answer ‘yes’ or ‘no.’
 
If you answer ‘no’ to question one, then answer
question two. Otherwise, do not answer question two.

Question Two: Did Precision Surgical, LLC, discharge Paul Turner
because he filed a workers’ compensation claim in good faith?
 
. . . [T]here may be more than one cause for an
employment decision. An employer does not discharge
an employee for filing a workers’ compensation claim in
good faith. [sic] If the employer would have discharged
the employee when he did even if the employee had not
filed a workers’ compensation claim. Answer ‘yes’ or
‘no.’ 

(emphasis added). 
          Turner objected to the conditional nature of the instruction (italicized above)
given for the second question. The trial court overruled Turner’s objection:
Turner:        Plaintiff objects to Question 2 on the basis that it is
predicated upon [a] no response for Question 1. Plaintiffs
pled the cause of action in the alternative, and both of
them—the plaintiff feels that both—both questions
should be submitted at the same time for consideration
without one requiring a “no” answer.
 
Court:          So that you get a— 
 
Turner:        So that the plaintiff can— 
 
Court:          —charge that we can’t—I mean, a verdict that we can’t
use because the answers are in conflict if they say “yes”
to both?
 
Turner:        Your Honor, it is the plaintiff’s position that election of
remedies would then be appropriate.
 
Court:          Okay. That’s overruled. 

          The jury returned a negative answer on both causes of action, and the trial
court rendered a take-nothing judgment. 
                          Propriety of the Trial Court’s Jury Instruction
          In his sole issue, Turner argues that the instruction preceding Question Two
was improper because the trial court conditioned a response to the second question
on a negative response to the first, presenting his claims disjunctively and thus
allegedly preventing him from properly presenting both of his claims, which he
contends were alternative (but not mutually exclusive) theories of recovery.


 
A.      The Standard of Review
          An abuse-of-discretion standard governs challenges to error in the jury
charge. Tex. Dep’t of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990);
Scott Bader, Inc. v. Sandstone Prods., Inc., 248 S.W.3d 802, 819 (Tex.
App.—Houston [1st Dist.] 2008, no pet.). A trial court abuses its discretion when
its actions are arbitrary, unreasonable, and without reference to any guiding rules
or principles. Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997).
B.      The Law
          1.       Submission of Jury Questions Generally
          Ordinarily, a trial court has broad discretion in submitting jury questions and
instructions. Mobil Chem. Co. v. Bell, 517 S.W.2d 245, 256 (Tex. 1974); Roy v.
Howard-Glendale Funeral Home, 820 S.W.2d 844, 846 (Tex. App.—Houston [1st
Dist.] 1991, writ denied). In fact, trial courts have considerably more discretion in
submitting instructions and definitions than in submitting questions. See Harris v.
Harris, 765 S.W.2d 798, 801 (Tex. App.—Houston [14th Dist.] 1989, writ denied). 
Nonetheless, a jury charge must fairly place the disputed issues before the jury. 
Blonstein v. Blonstein, 831 S.W.2d 468, 471 (Tex. App.—Houston [14th Dist.]
1992), writ denied, 848 S.W.2d 82 (Tex. 1992). Additionally, a party is entitled to
an affirmative submission of all of its theories of recovery that have support in the
pleadings and evidence. See Tex. R. Civ. P. 278 (providing that it is mandatory for
trial court to submit questions raised by pleadings and evidence); Exxon Corp. v.
Perez, 842 S.W.2d 629, 631 (Tex. 1992). 
          2.       Conditional Submission
          A jury question is conditionally submitted when the jury is instructed to
answer the question contingent upon its answer to some other question, whether
the predicate answer be in the affirmative or in the negative. See Roy W.
McDonald & Elaine A. Grafton Carlson, Jury Trial: Charge, in 4 Texas Civil
Practice § 22:30[a] (West Group, 2nd ed.. 2001) [hereinafter “McDonald &
Carlson”]; 71 Tex. Jur. 3d. Trial & Alternative Dispute Resolution § 281 (2002). 
Commentators have noted certain advantages of conditional submissions:
The judicious employment of conditions has many advantages. It
may simplify the charge, clarify the jury’s task, avoid findings on
immaterial questions, prevent the risk of comment on the weight of
the evidence, or forestall conflicting findings.

McDonald & Carlson § 22:30[a]. Nonetheless, because it is error for a trial court
to refuse to submit a question when there is some evidence to support its
submission, an improper conditional submission that “deprives a party of the
affirmative submission of an issue raised by the pleadings and evidence . . .
constitutes reversible error.” Varme v. Gordon, 881 S.W.2d 877, 881 (Tex.
App.—Houston [14th Dist.] 1994, writ denied). For example, it is improper to
condition a question submitting one cause of action upon an affirmative answer to
a question submitting another cause of action when the elements of two causes of
action are different and each constitutes a separate, independent theory of recovery. 
See id.
3.Disjunctive Submission
          Disjunctive submission of jury questions is governed by Texas Rule of Civil
Procedure 277, which provides, in part:
The court may submit a question disjunctively when it is apparent
from the evidence that one or the other of the conditions or facts
inquired about necessarily exists.

Tex R. Civ. P. 277. “The disjunctive submission provision contained in Rule 277
was added to the jury charge rules in 1940 as an exception to separate and distinct
submission.” See William V. Dorsaneo III, Revision & Recodification of the Texas
Rules of Civil Procedure Concerning the Jury Charge, 41 S. Tex. L. Rev. 675, 714
(Summer 2000) [hereinafter “Dorsaneo, Revision & Recodification”]; see also
Tex. R. Civ. P. 277, 3 Tex. B. J. 566 (1940, amended 1941) (allowing use of
disjunctive submission of two or more inconsistent issues in one question as one of
very limited exceptions to rule that otherwise required separately and distinctly
submitted special issues). “Accordingly, disjunctive submission is simply one type
of broad-form submission.” Dorsaneo, Revision & Recodification at 714.
          A disjunctive submission has been described as “an ‘either/or’ question
posed in a manner that necessarily prevents the two factual alternatives inquired
about from being found to exist concurrently.” R. Mike Borland, Comment,
Disjunctive Submission of Inferrential Rebuttal Issues, 33 Baylor L. Rev. 147,
148 (Winter 1981) [hereinafter “Borland, Disjunctive Submission”]. Accordingly,
rule 277 allows the trial court to submit, disjunctively, the existence of two
mutually exclusive propositions when conflicting answers are possible.


 See Lake
LBJ Mun. Util. Dist. v. Coulson, 692 S.W.2d 897, 908 (Tex. App.—Austin 1985),
rev’d on other grounds, 734 S.W.2d 649 (Tex. 1987); Warren v. Denison, 563
S.W.2d 299, 304–05 (Tex. Civ. App.—Amarillo 1978, no writ); see also Mustang
Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195, 200 (Tex. 2004) (suggesting
disjunctive jury question that allowed jury to determine which of two parties
committed first material breach of contract); Select Ins. Co. v. Boucher, 561
S.W.2d 474, 477 (Tex. 1978) (indicating that submission of disjunctive jury issues
is appropriate when two alternative grounds of recovery are developed through
pleadings and submitted issues). 
          Certain commentators have opined that “[d]isjunctive submissions . . .
should be used sparingly and with great caution” because they
 
run the danger of either misplacing the burden of proof (when one of
two options must be shown by a preponderance of the evidence and
the other need not be) or of unduly limiting the jury’s choices (when
the jury in fact has more than two choices—e.g., the plaintiff was
negligent, the defendant was negligent, or the negligence of neither
party was shown by a preponderance of the evidence).

The Honorable Joe Brown, Jack Hebdon, & C.L. Mike Schmidt, Personal Injury,
in 5 Texas Practice Guide § 13:112 (West Group, 2nd ed., 2008); see Borland,
Disjunctive Submission at 148 (stating that disjunctive submission “is appropriate
only when one or the other of the conditions or facts must exist; its use would be
inappropriate where there is the possibility of an alternative finding not presented
in the issue.”) (emphasis in original).
          The current text of rule 277 contemplates the disjunctive submission of
issues in one jury question, but an early advisory opinion indicates that issues may
be submitted disjunctively in separate questions, with one being conditioned, or
predicated, on a negative answer to the other. Compare Tex R. Civ. P. 277 (“The
court may submit a question disjunctively when it is apparent from the evidence
that one or the other of the conditions or facts inquired about necessarily exists.”)
(emphasis added) with Subcomm. on Interpretation of R. of Civ. P., State Bar of
Tex., Op., 8 Tex. B. J. 281, 281–82 (1945)


 and ASEP USA, Inc. v. Cole, 199
S.W.3d 369, 378 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (concluding that
trial court did not err in submitting to jury “apparently contradictory theories of
breach of contract and promissory estoppel,” in case in which charge instructed
jury to answer promissory-estoppel question only if it had already answered “no”
to prior breach-of-contract question).
C.      Discussion
          Here, the questions were submitted separately, the second predicated on a
particular answer to the first. Question Two was thus a conditional submission. 
Additionally, because Question Two was predicated on a negative answer to
Question One—allowing the jury to answer one or the other of the claims
affirmatively, but not both—the conditional submission of question two operated,
in its effect, as a disjunctive submission of Turner’s claims.


 See Subcomm. on
Interpretation of R. of Civ. P., State Bar of Tex., Op., 8 Tex. B. J. 281–82 (1945).
          In his sole challenge on appeal, Turner argues that the trial court erred in
charging the jury because the conditional submission of Question Two, predicated
on a negative answer to question one, prevented him from properly presenting all
of his theories of recovery. Specifically, Turner contends that, by conditioning a
response to the second question upon a negative response to the first, the jury could
not consider (and potentially answer “yes” to) both causes of action
simultaneously, which it should have been permitted to do. 
          1.       The Instruction Was not Erroneous
          Turner’s wrongful-termination claim is based on Sabine Pilot Service, Inc. v.
Hauck, in which the Texas Supreme Court, creating a narrow exception to at-will
employment, declared that terminating an employee solely for his refusal to
perform an illegal act violates public policy. 687 S.W.2d 733, 735 (Tex. 1985). 
Under Sabine Pilot, “it is the plaintiff’s burden to prove by a preponderance of the
evidence that his discharge was for no reason other than his refusal to perform an
illegal act.” Id. (emphasis added). Turner contends that the illegal act that he
refused to perform was insurance fraud, which he argues his making a claim under
Precision’s health-insurance plan would have entailed because he would have had
to lie about the circumstances of his injury. See Tex. Pen. Code Ann.
§ 35.02(a)(1)(A)–(B), (2) (Vernon 2008) (“A person commits an offense if, with
intent to defraud or deceive an insurer, the person, in support of a claim for
payment under an insurance policy: (1) prepares or causes to be prepared a
statement that: (A) the person knows contains false or misleading material
information; and (B) is presented to an insurer; or (2) presents or causes to be
presented to an insurer a statement that the person knows contains false or
misleading material information.”).
          Turner’s retaliatory-discharge claim is based on Texas Labor Code section
451.001, which provides that “[a] person may not discharge . . . an employee
because the employee has: (1) filed a workers’ compensation claim in good faith
. . . .” Tex. Lab. Code Ann. § 451.001(1) (Vernon 2006). “[T]o prove a
‘retaliatory discharge’ claim, the employee must show that the employer’s action
would not have occurred when it did had the employee’s protected conduct—filing
a workers’ compensation claim—not occurred.” Haggar Clothing Co. v.
Hernandez, 164 S.W.3d 386, 388 (Tex. 2006). That is, although “[t]he employee
need not show he was fired solely because of filing the workers’ compensation
claim . . . , he must show that, ‘but for’ the filing of the claim, the discharge would
not have occurred when it did.” Green v. Lowe’s Home Ctrs., Inc., 199 S.W.3d
514, 518 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citations omitted,
emphasis added). 
          Turner argues:
At first glance, these two separate prohibitions on termination
would appear to be mutually exclusive since they both [sic] exclude
other possible reasons for termination. However, in this case they are
one [and] the same. By filing for workers’ compensation, Mr. Turner
refused to commit insurance fraud. There is evidence in the record
supporting both theories of liability.
 
. . .
 
This testimony and evidence establishes facts supporting the
elements of both Sabine Pilot and retaliatory discharge. What is
unique about the facts supporting the causes of action in this case is
that they are one [and] the same. Mr. Turner was fired for [filing for]
workers’ compensation and was fired about 60 hours after he did so. 
By filing for workers’ compensation he was refusing to commit
insurance fraud (an illegal act) and was fired about 60 hours after he
refused. In short, by filing for workers’ compensation he was refusing
to commit an illegal act.
           
(emphasis added, citation omitted).
          The problem with Turner’s argument is that it focuses on how he conveyed
his refusal to do the illegal act, rather than on what the illegal act that he refused to
do was or the fact of the refusal itself. The key is that the illegal act that he refused
to commit was lying to the insurer, i.e., insurance fraud. Sabine Pilot thus requires
that Turner’s firing have been solely for his refusal to perform that illegal act. In
contrast, his retaliatory-discharge claim required that Turner show that, because he
filed a workers’ compensation claim in good faith, he was fired. See Tex. Lab.
Code Ann. § 451.001(1); Green, 199 S.W.3d at 518. If he was fired for the sole
reason that he refused to lie to Precision’s insurer, then he necessarily was not fired
because he made a good-faith claim for workers’ compensation benefits;
conversely, if he was fired because he made a good-faith claim for workers’
compensation benefits, then he could not have been fired for the sole reason that he
refused to lie to Precision’s insurer. This state of mutual exclusivity exists
regardless of whether Turner expressed his refusal to commit insurance fraud
implicitly, by the filing of workers’ compensation benefits, or expressly, by telling
Precision that he refused to lie. Because the two claims are mutually exclusive on
a legal basis under the facts of this case, the trial court had the discretion to submit
the two claims to the jury disjunctively (although it did so in two questions, the
second being conditioned on a negative answer to the first), to avoid possible
confusion or potentially conflicting answers. See Coulson, 692 S.W.2d at 908
(indicating that trial court may submit, disjunctively, existence of two mutually
exclusive propositions when conflicting answers are possible); cf. Guthrie v. Tifco
Indus., 941 F.2d 374, 379 (5th Cir. 1991) (noting that claim for termination based
on age discrimination is “mutually exclusive” with claim for wrongful discharge
under Sabine Pilot).



 
          For these reasons, we hold that the trial court did not abuse its discretion in
submitting the two questions as it did.



          2.       Alternatively, Any Error Would Have Been Harmless
          Alternatively, even if the trial court had erred by submitting the questions as
it did, we hold that any such error would have been harmless. 
          Error in the charge is harmful, and thus reversible, only if it caused or was
reasonably calculated to cause, and probably did cause, the rendition of an
improper judgment or if it prevented the appellant from properly presenting the
case on appeal. Tex. R. App. P. 44.1; E.B., 802 S.W.2d at 649; In re D.R., 177
S.W.3d 574, 581, 584 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)
(applying rule 44.1 to determination of harm in context of conditional submission
of jury question). Because it is error for a trial court to refuse to submit a question
when there is some evidence to support its submission, our sister court has
explained the harm standard this way—albeit in a case not involving a disjunctive
submission: “If [an improper] conditional submission deprives a party of the
affirmative submission of an issue raised by the pleadings and evidence, such
conditional submission also constitutes reversible error.” Varme, 881 S.W.2d at
881.
          There were three possible outcomes that could have resulted, in the abstract,
from the trial court’s conditional, disjunctive submission of Question Two:
          1.The jury could have answered “No” to Question One and “Yes”
to Question Two, finding liability only for Turner’s retaliatory-discharge cause of action;
   
2.The jury could have answered “No” to Question One and “No”
to Question Two, offering Turner no relief whatsoever; or
 
3.The jury could have answered “Yes” to Question One (finding
liability for Turner’s Sabine Pilot cause of action) and, thus, it
would not have been permitted to answer Question Two.

In the abstract, the first two outcomes would have allowed the jury to consider both
theories of recovery. Again in the abstract, either the first or third outcome would
have given Turner actual relief on one cause of action, but not on both. The only
outcome not permitted by the conditionally worded charge was a “Yes” answer to
both questions.
          The second outcome is what actually occurred. At trial, the jury considered
both questions and answered both in the negative. On appeal, Turner’s contention
is that the jury should have been allowed to consider both questions so that it
would have had the opportunity to answer “Yes” to the first question and “Yes” to
the second (the only combination of answers not allowed by the charge as given). 
This argument presents only theoretical, not actual, harm. The jury did consider
both questions: it considered them both—as its negative answer to the first
question allowed it to do—and then rejected them both. The instruction thus did
not in any way prevent the jury from considering both of Turner’s claims.
          We hold that, because the jury considered both theories of recovery and
rejected each, any possible error in the challenged instruction would not have
caused the rendition of an improper judgment or have prevented Turner from
properly presenting his case on appeal. See Tex. R. App. P. 44.1. Put another way,
the conditional submission of Question Two, even if it had been error, would not
have been reversible error because it would not have deprived Turner of the
affirmative submission of an issue (his claim for retaliatory discharge) raised by
the pleadings and the evidence. See Varme, 881 S.W.2d at 881. Therefore, we
hold that even if the trial court had erred in submitting Turner’s claims
conditionally, any such error would have been harmless, requiring us to overrule
Turner’s sole issue on that independent basis.



                                                         Conclusion
          We affirm the judgment of the trial court.


 
 
 
Tim Taft
                    Justice

Panel consists of Justices Taft, Keyes, and Alcala.