FINSERV CASUALTY CORP., Capstone Associated Services, Ltd., Liquidating Marketing, Ltd., RSL-3B-IL, LTD., RSL-5B-IL, Ltd., RSL Funding, LLC, and RSL Special-IV, Ltd., Appellants

v.

TRANSAMERICA LIFE INSURANCE COMPANY f/k/a Transamerica Occidental Life Insurance Company, Transamerica Annuity Service Corporation, and Monumental Life Insurance Company, Appellees

NO. 14-14-00838-CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion Filed October 20, 2016.

Rehearing Overruled December 21, 2016

Rehearing Overruled April 13, 2017

E. John Gorman, John Zavitsanos, John R. Craddock, Houston, TX, for Appellants.

David L. Pybus, Houston, TX, for Appellees.

Panel consists of Chief Justice Frost and Justices Christopher and Donovan.

## OPINION

Kem Thompson Frost, Chief Justice

This appeal arises out of a dispute among companies involved in making or receiving structured-settlement payments. The trial court disposed of all claims by granting various summary-judgment motions, except for the defendants' request for attorney's fees. Following jury findings as to the amount of reasonable and necessary attorney's fees, the trial court rendered a final judgment dismissing the plaintiffs' claims, granting the defendants summary judgment on their right to interpleader and to an offset, and awarding the defendants reasonable and necessary attorney's fees. On appeal, the plaintiffs assert that the trial court erred in striking their amended pleading, granting summary judgment as to their breach-of-contract claims and the defendants' offset claim, awarding the defendants' attorney's fees, and holding the plaintiffs jointly and severally liable for the fees. We conclude the trial court erred in awarding attorney's fees for prosecuting the interpleader action and in granting summary judgment as to certain breach-of-contract claims. Because other breach-of-contract claims are moot, we vacate the ·part of the trial court's judgment that addresses these claims and dismiss the appeal as to this part of the trial court's judgment. As to the rest of the judgment, we reverse and remand in part and affirm as modified in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellants/plaintiffs FinServ Casualty Corp., Capstone Associated Services, Ltd., Liquidating Marketing, Ltd., RSL-3B-IL, Ltd., RSL-5B-IL, Ltd., RSL Funding, LLC, and RSL Special-IV, Ltd. (collectively the "FinServ Parties") sued appellees/defendants Transamerica Life Insurance Company f/k/a Transamerica Occidental · Life Insurance Company, Transamerica Annuity Service Corporation, and Monumental Life Insurance Company (collectively the "Transamerica Parties"), complaining of the alleged failure to make certain structured-settlement annuity payments. The FinServ Parties asserted claims for alleged violations of

the Insurance Code chapter 541, the Deceptive Trade Practices Act, the Unfair Claim Settlement Practices Act, and the Prompt Payment of Claims Act. They also asserted claims based on alleged breaches of an insurer's duty of good faith and fair dealing, alleged breaches of contract, anticipatory repudiation, and, in addition, they requested relief under the Declaratory Judgments Act.

The trial court granted summary judgment dismissing all of the FinServ Parties' extra-contractual claims. The trial court also granted "Transamerica's Motion for Partial Summary Judgment on its Right to Interpleader and to Attorney's Fees" and "Transamerica Life Insurance Company and Transamerica Annuity Service Corporation's Motion for Partial Summary Judgment Regarding Offset." The trial court granted the Transamerica Parties' special exceptions to the FinServ Parties' First Amended Original Petition and their First Supplement to First Amended Original Petition in a May 6, 2013 order ("Special Exceptions Order"), ordering the FinServ Parties to file a new pleading curing the defects listed in the trial court's order by May 20, 2013 (the "Pleading Deadline"). The FinServ Parties did not file a new pleading by this deadline. Instead, on the deadline, the FinServ Parties moved for reconsideration of the Special Exceptions Order and, in the alternative, an extension of the deadline to replead. The trial court denied the reconsideration motion and did not grant an extension.

The FinServ Parties filed a Second Amended Petition on June 19, 2013. Weeks later, on July 15, the Transamerica Parties filed a traditional and no-evidence summary judgment motion. Within the week, the FinServ Parties filed a Third Amended Petition in which they asserted, for the first time, claims for tortious interference with prospective business relations and tortious interference with existing contract. Within two weeks the Transamerica Parties filed a second traditional and no-evidence summary judgment motion and a motion to strike the Third Amended Petition. In the second summary-judgment motion, the Transamerica Parties asserted new grounds, including grounds challenging the tortious-interference claims.

In August 2013, the trial court granted the Transamerica Parties' motion to strike the Third Amended Petition and one of their traditional and no-evidence summary-judgment motions. In the trial that followed, a jury made findings regarding the reasonable and necessary attorney's fees for prosecuting the interpleader action and under the Declaratory Judgments Act. The trial court rendered a final judgment, incorporating its summary-judgment rulings, and ordering the FinServ Parties, jointly and severally, to pay the Transamerica Parties reasonable and necessary attorney's fees for prosecution of the interpleader action, defending against the FinServ Parties' declaratory-judgment action, and for advancing the Transamerica Parties' declaratory-judgment action.

On appeal, the FinServ Parties assert five appellate issues, including arguments that the trial court erred in granting summary judgment.

## II. ANALYSIS

We review a grant of summary judgment de novo. *KCM Financial LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). In a traditional summary-judgment motion, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In our review of

the trial court's granting of the Transamerica Parties' summary-judgment motions, we consider all the evidence in the light most favorable to the FinServ Parties, crediting evidence favorable to the FinServ Parties if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. v. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

**A. Did the trial court err in striking the tortious-interference claims without sustaining special exceptions as to those claims?**

█ In their first issue, the FinServ Parties assert that the trial court erroneously struck the tortious-interference claims pleaded in the Third Amended Petition without first sustaining special exceptions as to those claims and allowing the FinServ Parties an opportunity to cure any pleading deficiencies. The trial court did not strike the tortious-interference claims; rather, the trial court struck the Third Amended Petition, in which the FinServ Parties, for the first time, pleaded tortious-interference claims.

In analyzing the first issue, we turn to this court's precedent in *Continental Casing Corporation v. Siderca Corporation*. *See* 38 S.W.3d 782, 786, 790–91 (Tex. App.–Houston [14th Dist.] 2001, no pet.). In that case, the defendants filed special exceptions to the plaintiff's First Amended Petition. *See id.* at 786. The trial court granted the special exceptions and ordered that the plaintiff, within seven days of the court's order, either amend the plaintiff's petition or advise the court that the plaintiff intended to stand on its current petition. *Id.* at 786, 790–91. The plaintiff did not amend its petition within seven days of the special-exceptions order. *Id.* But, sixteen days after the special-exceptions order, the plaintiff filed its Second Amended Petition, and twenty-nine days after the special-exceptions order, the plaintiff filed its Third Amended Petition. *Id.* In these petitions, the plaintiff added new defendants and pleaded certain claims for the first time. *Id.* The trial court granted the defendants' motion to strike the Second Amended Petition and the Third Amended Petition because the plaintiff filed them after the deadline in the special-exceptions order. *Id.*

On appeal, the plaintiff in the *Continental Casing Corporation* case asserted that the trial court erred in granting the motion to strike its last two amended petitions. The plaintiff argued that it amended its petition more than seven days before trial and that the plaintiff did not violate any deadline in a docket-control order. *Id.* at 790–91. The plaintiff also argued that the trial court erred in striking the amended petitions because the trial court did not state in the special-exceptions order that the deadline for the plaintiff to add new parties was within seven days of the order. This court stated that a trial court has great discretion as to the control of its docket, rejected the plaintiff's arguments, and held that the trial court did not abuse its discretion by striking the petitions filed after the deadline in the special-exceptions order. *Id.*

In today's case, the trial court granted special exceptions as to the FinServ Parties' First Amended Petition and their First Supplement to First Amended Petition, ordering the FinServ Parties to file a new pleading curing the defects identified in the trial court's order by the Pleading Deadline. The FinServ Parties did not do so. But, the FinServ Parties filed a Second Amended Petition about a month later and a Third Amended Petition about two months later. In the Third Amended Petition they asserted for the first time tortious-interference claims. The Transamerica Parties filed a motion to strike the Third Amended Petition because it was filed after the Pleading Deadline. The trial court granted the motion to strike.

On appeal, the FinServ Parties argue that in the Special Exceptions Order, the trial court did not address the Third Amended Petition (which had not yet been filed) or the FinServ Parties' tortious-interference claims (which the FinServ Parties first pleaded in the Third Amended Petition). In the *Continental Casing Corporation* case, the trial court did not address in its special-exceptions order the Second Amended Petition, the Third Amended Petition, or the new claims added in these petitions, yet this court concluded that the trial court did not err. *See id.* at 786, 790–91. The FinServ Parties argue that the trial court erroneously struck their tortious-interference claims without first sustaining any special exceptions as to those claims and then giving the FinServ Parties an opportunity to replead the tortious-interference claims. In the *Continental Casing Corporation* case, the trial court struck the plaintiff's amended pleadings adding new claims without first sustaining any special exceptions as to those claims and giving the plaintiff an opportunity to replead. *See id.*

The FinServ Parties argue that the trial court erred in striking their pleading because in the Special Exceptions Order, the trial court did not give the FinServ Parties notice that the court would strike or dismiss any amended pleading filed after the Pleading Deadline. In the *Continental Casing Corporation* case, the trial court ordered the plaintiff, within seven days of the court's order, to either amend its petition or to advise the court that the plaintiff intended to stand on its current petition. *See id.* This court affirmed the trial court's striking of petitions filed after this deadline, without requiring the trial court to have given notice in the special-exceptions order that the trial court would strike a petition filed after the deadline. *See id.*

The FinServ Parties argue that the trial court erred in striking the Third Amended Petition because the docket control order did not set a deadline for amending pleadings and because the FinServ Parties filed the Third Amended Petition more than seven days before trial, in accordance with Texas Rule of Procedure 63, which governs amendments and responsive pleadings. *See* Tex. Civ. P. 63. In the *Continental Casing Corporation* case, this court rejected the same argument. *See Continental Casing Corporation*, 38 S.W.3d at 790–91. The FinServ Parties assert that to the extent the motion to strike the Third Amended Petition was a substantive attack on the tortious-interference claims, the trial court erred in granting the motion because a motion to strike pleadings may not be used to obtain a dismissal of claims based on alleged substantive defects. But, as in the *Continental Casing Corporation* case, in the motion to strike, the Transamerica Parties did not attack the substance of the tortious-interference claims; rather the Transamerica Parties asserted a procedural basis—the failure to file the amended pleading by the Pleading Dead-

line.[1] Under the *Continental Casing Corporation* case, the trial court did not abuse its discretion in striking the Third Amended Petition. *See id.* at 786, 790–91.

On appeal, the FinServ Parties cite the *Granado* case from this court. *See Granado v. Madsen*, 729 S.W.2d 866, 869–71 (Tex. App.–Houston [14th Dist.] 1987, writ ref'd n.r.e.). In *Granado*, this court held that the trial court erred in striking all of the plaintiffs' pleadings against a defendant-doctor and dismissing the plaintiffs' claims against that doctor with prejudice. *See id.* In its order granting the motion to strike the FinServ Parties' Third Amended Petition, the trial court did not dismiss any claims with prejudice, and the trial court did not strike all of the FinServ Parties' pleadings. Rather, the trial court left the Second Amended Petition intact as the FinServ Parties' live pleading. The *Granado* case is not on point. *See id.*

The FinServ Parties also cite the *Kutch* case from the Thirteenth Court of Appeals. *See Kutch v. Del Mar College*, 831 S.W.2d 506, 508–13 (Tex. App.–Corpus Christi 1992, no writ). In *Kutch*, after the trial court granted special exceptions, the plaintiff did not file an amended pleading by the deadline in the special-exceptions order. *See id.* at 507. The trial court struck the plaintiff's pleadings and dismissed the plaintiffs' claims with prejudice. *See id.* at 507, 513. In the trial court and on appeal, the defendants asserted that the dismissal with prejudice was justified as a sanction. *See id.* at 507–08. The court of appeals in *Kutch* concluded that the trial court erred in striking the plaintiff's pleadings and dismissing her claims with prejudice. *See id.*

at 507, 513. In its order granting the motion to strike the FinServ Parties' Third Amended Petition, the trial court did not dismiss any claims with prejudice, and the trial court did not strike all of the FinServ Parties' pleadings. The *Kutch* case is not on point. *See id.* at 507–13.

■ In its order granting the motion to strike the Third Amended Petition, the trial court stated that this motion was "well taken, particularly after the pattern of discovery abuses employed by the [FinServ Parties] in this case." Although the Transamerica Parties had sought death-penalty sanctions in another motion based on alleged discovery abuses by the FinServ Parties, in the motion to strike the Third Amended Petition, the Transamerica Parties relied upon the FinServ Parties' failure to meet the Pleading Deadline rather than any alleged discovery abuses. Under their first issue, the FinServ Parties also argue that the trial court's striking of the Third Amended Petition amounted to a death-penalty sanction that punished the FinServ Parties for amending their petition after the Pleading Deadline and that this death-penalty sanction was not warranted under applicable law. This complaint does not fall within the narrow scope of the fundamental-error doctrine recognized by the Supreme Court of Texas. *See In re B.L.D.*, 113 S.W.3d 340, 350–52 (Tex. 2003). Therefore, preservation of error in the trial court is required for appellate review of this complaint. *See In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003). The record reflects that the FinServ Parties did not raise this complaint in the trial court.[2]

1. The FinServ Parties also note that the Transamerica Parties did not move to strike the Second Amended Petition, even though the FinServ Parties filed that pleading after the Pleading Deadline. The Transamerica Parties' failure to ask the trial court to strike this petition did not preclude them from asking the trial court to strike the Third Amended Petition.

2. In their motion for reconsideration of the trial court's striking of the Third Amended Petition, the FinServ Parties noted the trial court's statement that this motion was "well

See Laguan v. U.S.Bank Trust, N.A., No. 14-14-00577-CV, 2016 WL 750172, at *3-4 (Tex. App.-Houston [14th Dist.] Feb. 25, 2016, no pet.) (mem. op.). Because The FinServ Parties failed to preserve error, we cannot reverse the trial court's judgment based on this alleged error.[3] See Tex. R. App. P. 33.1(a); In re L.M.I., 119 S.W.3d at 711; In re B.L.D., 113 S.W.3d at 350-52; Laguan, 2016 WL 750172, at *3-4.

For the foregoing reasons, we overrule the first issue.[4]

### B. Did the trial court err in granting an offset that allegedly overrode a superior lien in the Taplette Payment?

In their fourth issue, the FinServ Parties assert that the trial court erred in granting the summary-judgment motion filed by appellees/defendants Transamerica Life Insurance Company f/k/a Transamerica Occidental Life Insurance Company and Transamerica Annuity Service Corporation (collectively the "Transamerica Companies") on their offset claim. In this motion, the Transamerica Companies asserted that as a matter of law they were entitled to offset the amount of a judgment against the $75,000 payment that they were to make on December 10, 2010 (the "Taplette Payment") to appellant/plaintiff Liquidating Marketing, Ltd.,

formerly known as Rapid Settlements, Ltd. ("Rapid"), which they had interpleaded into the trial court's registry. The Transamerica Companies held a judgment against Rapid, under which Rapid owed approximately $52,000 when the Transamerica Companies filed their motion. Kelly Taplette previously had transferred to Rapid her right to receive the Taplette Payment. The FinServ Parties assert that Rapid gave appellant/plaintiff FinServ Casualty Corporation ("FinServ") and another entity a lien in Rapid's right to receive the Taplette Payment. They claim that after Rapid defaulted on loans secured by this lien, Rapid transferred its right to receive this payment to FinServ in lieu of foreclosure. They also alleged that FinServ later transferred this right to appellant/plaintiff Capstone Associated Services, Ltd.

In their summary-judgment motion on offset, the Transamerica Companies asserted that in the order allowing Taplette to transfer the right to receive the Taplette Payment to Rapid ("Taplette Order"), the California trial court prohibits Rapid from transferring the right to the Taplette Payment. The Transamerica Companies argued that any transfer of the right to the Taplette Payment is void.

taken, particularly after the pattern of discovery abuses employed by the [FinServ Parties] in this case." The FinServ Parties asserted that the trial court erred in relying on these unspecified discovery abuses, which the Transamerica Parties did not mention in their motion to strike the Third Amended Petition. The FinServ Parties asserted that the trial court had effectively rendered a death-penalty sanction without specifying the discovery abuses that rise to the level of sanctionable conduct. In this complaint, the FinServ Parties challenge the striking of the Third Amended Petition as an improper death-penalty sanction based on discovery abuses, which is the subject of their second appellate issue. The FinServ Parties do not assert that the trial court effectively assessed a death-

penalty sanction that punished them for amending their petition after the Pleading Deadline.

3. Even if the FinServ Parties had preserved error as to this complaint, we would conclude the complaint lacks merit.

4. Because we are overruling the first issue based on the ground that the Third Amended Petition was filed after the Pleading Deadline, we need not and do not address the FinServ Parties' second issue, in which they attack the trial court's alternative basis for striking the Third Amended Petition based on the FinServ Parties' alleged pattern of discovery abuses.

They also argued that, under the qualified assignment agreement, the periodic payments may not be "sold assigned, or encumbered." The Transamerica Companies asserted that this contractual language prohibits Rapid from giving FinServ or other entities a security interest in Rapid's right to receive the Taplette Payment.

Under the fourth issue, the FinServ Parties complain that, by awarding the Transamerica Companies an offset against the Taplette Payment, the trial court erroneously erased the first priority liens held by FinServ and another entity in Rapid's right to receive the Taplette Payment, as shown by UCC-1 financing statements contained in the summary-judgment record. The FinServ Parties contend that these liens are superior to the rights of the Transamerica Companies under their judgment against Rapid and that therefore the trial court erred in awarding the Transamerica Companies an offset in derogation of these prior, superior liens. In their offset summary-judgment motion, the Transamerica Companies asserted a ground to negate this superior-lien argument. They asserted that language in the qualified assignment agreement prohibited the creation of any such liens.

■ When, as in this case, the trial court grants a summary-judgment motion without specifying the grounds in the motion upon which the trial court relies, we must affirm the judgment if any of the grounds in the motion is meritorious. *Wilkinson v. USAA Federal Sav. Bank Trust Servs.*, No. 14–13–00111–CV, 2014 WL 3002400, at *5 (Tex. App.–Houston [14th Dist.] July 1, 2014, pet. denied) (mem. op.). In this circumstance, the appealing party must challenge all possible grounds on which summary judgment could have been granted, properly or improperly. *See id.* On appeal, the FinServ Parties have not challenged the ground that the qualified assignment agreement prohibited the creation of the alleged liens held by FinServ and another entity in Rapid's right to receive the Taplette Payment. Because the FinServ Parties have not challenged this ground, their only argument under the fourth issue lacks merit. *See id.* Accordingly, we overrule the fourth issue.

## C. Did the trial court err in awarding the Transamerica Parties attorney's fees and holding the FinServ Parties jointly and severally liable?

In their fifth issue, the FinServ Parties assert that the trial court erred in awarding the Transamerica Parties' attorney's fees and holding that the FinServ Parties are jointly and severally liable for these fees. Under this issue, the FinServ Parties advance the following arguments: (1) the trial court did not make a finding that an award of attorney's fees under the Declaratory Judgments Act would be equitable and just; (2) the trial court abused its discretion by deciding to award attorney's fees under the Declaratory Judgments Act before the jury determined the amount of reasonable and necessary attorney's fees; (3) the Transamerica Parties are not entitled to fees based on the interpleader action because the Transamerica Parties were not disinterested stakeholders; (4) the Transamerica Parties did not properly segregate their attorney's fees between recoverable and non-recoverable fees, and (5) the trial court erred in holding the FinServ Parties jointly and severally liable for the Transamerica Parties' attorney's fees.

### 1. Issues as to Award of Attorney's Fees under Declaratory Judgments Act

■ After the jury made findings as to the reasonable and necessary attorney's fees for prosecuting the interpleader action, defending against the FinServ Parties' declaratory-judgment claims, and

prosecuting the Transamerica Parties' declaratory-judgment claims, the trial court rendered judgment against the FinServ Parties, jointly and severally, for the amount of fees found by the jury. The trial court did not recite in its judgment that it was equitable and just to award the specific amount of reasonable and necessary attorney's fees awarded in the judgment. The FinServ Parties complain that the trial court did not make a finding that an award of attorney's fees under the Declaratory Judgments Act is equitable and just. The trial court awarded the Transamerica Parties attorney's fees under section 37.009 of the Declaratory Judgments Act, which authorizes the trial court to award reasonable and necessary attorney's fees as are equitable and just. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West, Westlaw through 2015 R.S.); *Corcoran v. Atasocita Comm'n Imp. Ass'n, Inc.*, No. 14–12–00982–CV, 2013 WL 5888127, at *11 (Tex. App.–Houston [14th Dist.] Oct. 31, 2013, pet. denied) (mem. op.). Although the trial court did not explicitly state in its judgment that the attorney's fees awarded are equitable and just, we presume the trial court followed the requirements of section 37.009. *See Corcoran*, 2013 WL 5888127, at *11 (holding that by rendering a judgment awarding attorney's fees under the Declaratory Judgment Act, trial court implicitly found that an award of these fees was equitable and just). By rendering the judgment awarding attorney's fees under section 37.009, the trial court implicitly found that an award of these fees was equitable and just. *See id.*

According to the FinServ Parties, the trial court erred by deciding to award attorney's fees under the Declaratory Judgments Act before the jury determined the amount of reasonable and necessary attorney's fees.[5] However, the trial court did not err in determining that it would award the Transamerica Parties reasonable and necessary attorney's fees under the Declaratory Judgments Act before any fact findings by the jury as to the amount of these fees and by then awarding the fees found by the jury and thus impliedly finding that this award is equitable and just. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009; *Corcoran*, 2013 WL 5888127, at *11; *In re Lesikar*, 285 S.W.3d 577, 584 (Tex. App.–Houston [14th Dist.] 2009, orig. proceeding).

### 2. *Propriety of Awarding Attorney's Fees in Interpleader Action*

■ The FinServ Parties argue that the Transamerica Parties may not recover attorney's fees based upon the interpleader action because the Transamerica Parties are not disinterested stakeholders. The Transamerica Companies filed a motion for partial summary judgment on their right to seek interpleader relief and to attorney's fees based on the interpleader action. In the motion, the Transamerica Companies asserted that there were rival claims to a $75,000 payment due to Kelly Taplette under a Transamerica annuity. Rapid had purchased the right to receive a $75,000 structured-settlement payment that the Transamerica Companies owed Kelly Taplette. When the Transamerica Companies obtained a judgment against Rapid, they sought to offset this judgment against the $75,000 payment that they owed to Rapid. Capstone asserted that it was the current owner of the right to receive the $75,000 payment. Transamerica asserted an interpleader action and eventually interpleaded $75,000 into the trial

---

**5.** In its August 27, 2013 order, the trial court stated that the Transamerica Parties are entitled to recover attorney's fees under section 37.009 of the Civil Practice and Remedies Code in an amount to be determined in a subsequent trial.

court's registry. In the interpleader summary-judgment motion, the Transamerica Companies asserted a right to recover attorney's fees based on the interpleader action. The trial court granted the interpleader summary-judgment motion and awarded $25,000 in its final judgment as reasonable and necessary fees for the prosecution of the interpleader action.

Under Texas Rule of Civil Procedure 43, a party who receives multiple claims to funds in its possession may join all claimants in one lawsuit and tender the disputed funds into the registry of the court. Tex. R. Civ. P. 43; *Heggy v. Am. Trading Emp. Retirement Account Plan*, 123 S.W.3d 770, 775 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). A party faced with competing claims obtains a discharge of liability to the competing claimants by interpleading the funds. *Heggy*, 123 S.W.3d at 775. A party is entitled to interpleader relief if three elements are met: (1) the party is either subject to, or has reasonable grounds to anticipate, rival claims to the same funds; (2) the party has not unreasonably delayed filing its interpleader action; and (3) the party unconditionally has tendered the funds into the registry of the court. *Id.* Failure to satisfy any of these elements will preclude interpleader relief. *Id.* A disinterested stakeholder who has reasonable doubts as to the party entitled to the funds in its possession and who in good faith interpleads the funds may recover its reasonable attorney's fees. *U.S. v. Ray Thomas Gravel Co.*, 380 S.W.2d 576, 580 (Tex. 1964); *Foreman v. Graham*, 693 S.W.2d 774, 778 (Tex. App.–Fort Worth 1985, writ ref'd n.r.e.).

In the trial court and on appeal, the FinServ Parties have asserted that the Transamerica Companies are not disinterested stakeholders because they asserted a claim to the interpleaded funds. Indeed, the Transamerica Companies successfully asserted offset rights and obtained more than $53,500 of the interpleaded funds. The trial court later ordered the release of the remaining interpleaded funds to the Transamerica Companies to be used as a partial satisfaction of the interpleader attorney's fees awarded in the final judgment. Under the unambiguous meaning of the term "disinterested stakeholder," a party who asserts a claim to the interpleaded funds is not a disinterested stakeholder. *See Foreman*, 693 S.W.2d at 778 (holding that title company that interpleaded earnest money qualified as a disinterested stakeholder because the company had abandoned its prior claim); Black's Law Dictionary 502 (8th ed. 2004) (defining "disinterested" in pertinent part as "not having a pecuniary interest"); *id.* 1440 (defining "stakeholder" in pertinent part as "[a] disinterested third party who holds money or property, the right to which is disputed between two or more other parties"). The summary-judgment evidence proved as a matter of law that the Transamerica Companies are not disinterested stakeholders because they successfully asserted a claim to the interpleaded funds.[6] *See Foreman*, 693 S.W.2d at 778; Black's Law Dictionary 502, 1440. Because they are not disinterested stakeholders, the Transamerica Parties cannot recover attorney's fees based upon the interpleader action. *See Ray Thomas Gravel Co.*, 380 S.W.2d at 580; *Foreman*, 693 S.W.2d at 778. Therefore, the trial court erred in awarding the Transamerica Parties $25,000 as reasonable and necessary attorney's fees for the prosecution of the interpleader action, and we sustain the fifth

---

6. Appellee/defendant Monumental Life Insurance Company is not a disinterested stakeholder because it never held or interpleaded the $75,000 or pursued an interpleader action.

issue to extent the FinServ Parties assert this argument. *See Ray Thomas Gravel Co.*, 380 S.W.2d at 580; *Foreman*, 693 S.W.2d at 778.

### 3. Alleged Failure to Segregate Recoverable and Non-recoverable Fees

The FinServ Parties argue that the Transamerica Parties failed to segregate their attorney's fees by separating fees that they may recover under Texas law from fees that they may not recover. Under this argument, the FinServ Parties do not address or analyze any evidence presented by the Transamerica Parties at trial. Instead, the FinServ Parties simply state that the Transamerica Parties did not provide sufficient evidence to allow the jury to award attorney's fees because the Transamerica Parties did not present any evidence of which fees were recoverable and which fees were not, nor did they present any specific evidence of the work performed for the fees requested.

With respect to segregation, the FinServ Parties assert that the Transamerica Parties are seeking to shift fees for services billed by counsel in unrelated litigation in Texas federal court; but other than this bare assertion, the FinServ Parties do not challenge any specific fees or any of the evidence the Transamerica Parties presented. At trial, counsel for the Transamerica Parties testified that they were not seeking fees for litigation in Texas federal court. The Transamerica Parties produced billing records from the law firm they had retained, and their counsel testified that he had whited out the fees for the federal case and for work that was not recoverable. The FinServ Parties do not make any argument as to why the segregation was improper, nor do they address the evidence in the record that the Transamerica Parties segregated their fees. The record does not bear out the FinServ Parties' contentions.

The FinServ Parties assert that the billing records are inadequate because they include block billing, heavy redaction, vague entries, clerical work, and duplicative tasks. The FinServ Parties make this general allegation without citing specific parts of the trial court record. The FinServ Parties do not discuss any specific billing entries that they contend are overly redacted, vague, duplicative, or clerical. Even under a liberal construction of the FinServ Parties' briefing, they have not adequately briefed this point. *See* Tex. R. App. P. 38.1(i); *Perez v. Le Prive Enterprises, L.L.C.*, No. 14-15-00291-CV, 2016 WL 3634298, at *2 (Tex. App.–Houston [14th Dist.] Jul. 7, 2016, no pet.) (mem. op.).

Under the Declaratory Judgments Act, the Transamerica Parties were required to prove the reasonableness and necessity of the attorney's fees they sought. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009. Generalities about tasks performed provide insufficient information for the fact finder to meaningfully review whether the tasks and hours were reasonable and necessary. *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014). Sufficient evidence includes, at a minimum, evidence of the services performed, who performed them, and at what hourly rate, when they were performed, and how much time the work required. *Id.* The Transamerica Parties submitted monthly billing statements that included the type of service provided, the name of the attorney providing the service, the date the service was performed, the hourly rate, and how much time the work required. The evidence submitted by the Transamerica Parties was sufficiently detailed to allow for meaningful review. *See id.*

Finally, the FinServ Parties assert in a conclusory fashion that there is no evidence that the paralegals who worked on the case possessed the requisite qualifications or performed legal tasks normally performed by an attorney. The record reflects that counsel for the Transamerica Parties testified specifically about his paralegal, including her experience and qualifications. The Transamerica Parties' counsel testified that the paralegal works under his supervision, performing tasks he would otherwise be required to perform, and ultimately saving the clients money because her billing rate is lower than his.

The record reflects that the Transamerica Parties submitted sufficiently detailed evidence of their attorney's fees and that they segregated recoverable fees from fees that were not recoverable. The FinServ Parties' argument that the Transamerica Parties did not provide sufficient evidence of segregated fees lacks merit. *See Long*, 442 S.W.3d at 255.

### 4. Imposition of Joint and Several Liability

■ The FinServ Parties assert the trial court erred by imposing joint and several liability among the various FinServ Parties because the Transamerica Parties invited the trial court to err by submitting a jury charge that did not ask the jury a question about joint and several liability and by failing to object to the charge, which asked the jury to determine what percentage of the fees should be paid by each of the FinServ Parties. Citing *General Chemical Corporation v. De La Lastra*, the FinServ Parties argue that a party cannot circumvent the jury through a judgment notwithstanding the verdict when the party failed to request or submit a jury question on that topic. *See* 852 S.W.2d 916, 920–21 (Tex. 1993). The record reflects that the Transamerica Parties ob-

jected to the questions in the jury charge in which the trial court asked the jury to determine which percentage of the fees should be paid by each of the FinServ Parties on the ground that there was no evidence to support the need for allocation among the parties and there was no basis to submit the questions to the jury.

■ A trial court may disregard a jury finding if it is unsupported by the evidence or it is immaterial. *Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 389–90 (Tex. 1997). A question is immaterial when it should not have been submitted, it calls for a finding beyond the province of the jury, such as a question of law, or when it was properly submitted but has been rendered immaterial by other findings. *See Se. Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999). In this context, the question of whether the FinServ Parties are jointly and severally liable for the Transamerica Parties' attorney's fees is a question of law. *See Houston Livestock Show and Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 585 (Tex. App.–Austin 2003, no pet.). A party need not submit a jury question on a question of law. *See River Oaks L-M. Inc. v. Vinton-Duarte*, 469 S.W.3d 213, 238 (Tex. App.–Houston [14th Dist.] 2015, no pet.). The FinServ Parties have not briefed a challenge to the merits of the trial court's decision to disregard the jury's answers to the questions regarding allocation of responsibility for the attorney's fees awards among the FinServ Parties. Because the Transamerica Parties did not need a jury finding on the question of whether the FinServ Parties were jointly and severally liable as a matter of law, their failure to submit a question does not waive the issue or trigger the doctrine of invited error.

Having addressed all the FinServ Parties' arguments under their fifth issue, we sustain the fifth issue to the extent the FinServ Parties argue that the trial court

erred in awarding the Transamerica Parties $25,000 as reasonable and necessary attorney's fees for the prosecution of the interpleader action, and we overrule the remainder of the fifth issue.

**D. Did the trial court err in granting summary judgment as to the FinServ Parties' breach-of-contract claims?**

In their third issue, the FinServ Parties assert that the trial court erred in granting summary judgment dismissing their breach-of-contract claims.

*1. Procedural Background*

In their Second Amended Petition, the FinServ Parties made the following allegations:

- The Transamerica Companies agreed to the Taplette Order and were obligated to make the Taplette Payment.
- Rapid obtained Taplette's right to receive the Taplette Payment via the Taplette Order.
- FinServ acquired Rapid's right to receive the Taplette Payment in lieu of foreclosing on its preexisting lien in this right.
- FinServ conveyed its right to receive the Taplette Payment to Capstone.
- The Transamerica Companies failed and refused to make the Taplette Payment to Rapid, FinServ, or Capstone.
- The Taplette Order bound the Transamerica Companies as a consent judgment.
- As required by the Taplette Order, the Transamerica Companies sent a letter to Rapid confirming their "mandatory obligation" to make the Taplette Payment ("Taplette Letter").
- This acknowledgement letter embodies the agreement requiring the Transamerica Companies to make the Taplette Payment to Rapid.

- In their "internal records," the Transamerica Companies created a new annuity policy that names Rapid as the direct payee ("Rapid Annuity").
- By not making the Taplette Payment, the Transamerica Companies failed to comply with the Taplette Order, the Taplette Letter, and the Rapid Annuity.
- Jerry Green transferred his right to receive certain structured-settlement payments from the Transamerica Companies ("Green Payments") to RSL Special IV, Ltd.
- A trial court approved this transfer in an order binding on the Transamerica Companies ("Green Order").
- Transamerica Life Insurance Company f/k/a Transamerica Occidental Life Insurance Company ("Transamerica Life") sent a letter to RSL Special IV acknowledging that it would comply with the Green Order ("Green Letter").
- The Transamerica Companies have not made all of the Green Payments, resulting in an $8,740 delinquency.
- Rita Jones transferred her right to receive certain structured-settlement payments from Monumental Life Insurance Company ("Jones Payments") to RSL-3B-IL, Ltd.
- A trial court approved this transfer in an order ("Jones Order"). RSL-3B-IL stands in Jones's shoes and can now enforce her rights to sue for breach of the Jones annuity.
- Monumental Life received notice and a copy of the Jones Order and responded with a letter acknowledging it would comply with the Jones Order by sending the Jones Payments to RSL-3B-IL, Ltd. ("Jones Letter"). The Jones Letter is a contract between RSL-3B-IL and Monumental Life.

- Monumental Life has not made all of the Jones Payments to RSL-3B-IL, Ltd., thus breaching the Jones annuity and the Jones Letter.
- The Transamerica Companies failed to make timely payments required pursuant to transfers related to fourteen other individuals (the "Transamerica Late Payments").
- Monumental Life failed to make timely payments required pursuant to transfers related to three other individuals (the "Monumental Late Payments").
- The much larger amounts attributable to defaults for all annuities issued by Transamerica Life and Monumental Life have exerted a substantial impact on the FinServ Parties' ability to finance their operations, causing the FinServ Parties to abandon a nonrecourse sale of Transamerica payments due to nonpayment by the Transamerica Parties. The defaults by the Transamerica Parties caused the FinServ Parties to lose the use and benefit of payments that could not be bundled and sold in a securitization, depriving the FinServ Parties of millions of dollars.

After the FinServ Parties filed the Second Amended Petition, the Transamerica Parties filed a traditional and no-evidence summary-judgment motion (the "First Motion"), asserting a number of grounds, including: (1) there is no evidence that when the contracts allegedly breached were executed, the consequential damages sought by the FinServ Parties (including those from the planned securitization) were foreseeable; (2) Monumental Life is not the owner of the Jones annuity and is not obligated to pay any of the FinServ Parties; (3) Monumental Life is not a party to the Jones Order and that order is not a contract; and (4) the FinServ Parties have no evidence of a contract between them and Monumental Life.

After the FinServ Parties filed the Third Amended Petition, the Transamerica Parties moved to strike that petition and also filed another traditional and no-evidence summary-judgment motion (the "Second Motion"). In the Second Motion, the Transamerica Parties asserted summary-judgment grounds challenging the tortious-interference claims added in the Third Amended Petition, in the event that the trial court did not strike this pleading. The Transamerica Parties also asserted the following grounds: (1) neither the Second Amended Petition nor the Third Amended Petition cures the pleading defects noted in the Special Exceptions Order, including the failure to specifically plead the contracts allegedly breached; (2) there is no evidence of the existence of a valid contract, an essential element of the FinServ Parties' breach-of-contract claims; (3) there is no evidence of consideration for any alleged contract on which the FinServ Parties are suing. The Transamerica Parties also asked the trial court to grant summary judgment on all of the FinServ Parties' claims as argued in the First Motion.

In its summary-judgment order, the trial court grants "Defendants' Traditional and No-evidence Motion for Summary Judgment." Because these words appear at the beginning of the title of the First Motion and the Second Motion, the trial court did not specify whether it granted the First Motion, the Second Motion, or both. In the Final Judgment, the trial court recited that it had granted "Transamerica's Traditional and No Evidence Motion for Summary Judgment." Thus, the trial court did not specify which motion it had granted. Under the unambiguous language of the summary-judgment order and the final judgment, we conclude that

the trial court granted only one of the summary-judgment motions.[7] In the summary-judgment order the trial court made a number of statements regarding the factual background of this case and the allegations and claims of the parties. Nonetheless, the trial court did not identify which summary-judgment motion it granted, nor did the court limit itself to a particular summary-judgment ground. We conclude that the trial court granted the Second Motion and did not rule on the First Motion. Because the trial court did not specify the grounds on which it granted summary-judgment, we may affirm based on any independent ground expressly presented in the Second Motion.[8] *See FM Props. v. Operating Co.*, 22 S.W.3d at 872.

### 2. Breach-of-Contract Claims Other Than Claims Regarding Jones, Taplette, or Green

In the Special Exceptions Order, the trial court ordered the FinServ Parties to replead and to specify the contracts allegedly breached. Though a trial court may dismiss claims outside of the summary-judgment procedure based on a pleading deficiency not cured after the tri-al court sustained special exceptions, the trial court also may grant summary judgment based upon the claimant's failure to cure a pleading deficiency after an opportunity to replead following special exceptions.[9] *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).

We review the pleadings de novo and take all allegations, facts, and inferences in the pleadings as true and view them in a light most favorable to the FinServ Parties. *See Natividad*, 875 S.W.2d at 699. Under this standard of review, as to any breach-of-contract claims based on payments other than the Taplette Payment, the Green Payments, and the Jones Payments (including any claims based upon the Transamerica Late Payments or the Monumental Late Payments), the FinServ Parties did not specify the contracts allegedly breached in either the Second Amended Petition or in the Third Amended Petition. *See id.* at 699–700. Therefore, the trial court did not err in granting summary judgment as to any breach-of-contract claims not based on the Taplette Payment, the Jones Payments, or the Green Payments.[10] *See id.*

---

7. When referring to the summary judgment it was granting in the summary-judgment order, the trial court used the singular word "motion" four times and once used the term "motion(s)," meaning "motion or motions." The trial court did not use the word "motions."

8. On appeal, the FinServ Parties point to a number of alleged inaccuracies in the trial court's statements in the summary-judgment order. Even presuming that the trial court made inaccurate statements, the trial court nonetheless impliedly granted summary judgment on the grounds expressly presented in the Second Motion.

9. The FinServ Parties rely on *Massey v. Armco Steel Company. See* 652 S.W.2d 932, 934 (Tex. 1983). In *Massey*, the trial court did not rule on the counterdefendants' special exceptions or give the counterplaintiff an opportunity to amend his pleading. *See id.* at 932, 934. In-stead, the trial court granted summary judgment, and the Supreme Court of Texas concluded that the trial court erred by using summary judgment to resolve the issue of whether the pleadings stated a claim. *See id.* at 934. In today's case, the trial court sustained special exceptions and provided an opportunity for the FinServ Parties to replead. The Supreme Court of Texas has concluded that the trial court may grant summary judgment based upon a claimant's failure to cure a pleading deficiency after an opportunity to replead following special exceptions. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). Thus, *Massey* is not on point.

10. The FinServ Parties complain that the trial court did not sustain special exceptions to the Third Amended Petition or give the FinServ Parties an opportunity to amend the Third Amended Petition. But, the trial court sus-

### 3. Breach-of-Contract Claims Based on Failure to Make the Green Payments

█ In the Second Amended Petition, the FinServ Parties allege that the Transamerica Companies breached the Green Order and the Green Letter by failing to make all the Green Payments. Under the terms of the Green Order, if after receipt of a copy of the Green Order, the Transamerica Companies and RSL Special-IV do not enter into a stipulation, Transamerica Annuity Service Corporation ("Transamerica Annuity") was required to direct Transamerica Life to send the Green Letter. The Transamerica Parties have attached to their appellate brief a certified copy of a subsequent order in the same Florida case in which the Green Order was signed (the "Second Order"). In their reply brief, the FinServ Parties do not dispute the authenticity of this document or assert that the Florida court did not sign the Second Order.

█ The Transamerica Parties suggest that this court should take judicial notice of the Second Order. Taking judicial notice of documents not considered by the trial court often is not appropriate because, in analyzing the merits of an appeal, appellate courts generally cannot consider evidence not before the trial court when the court made the challenged ruling. See Bowden v. Phillips Petroleum Co., 247 S.W.3d 690, 707 (Tex. 2008); Univ. of Tex. v. Morris, 162 Tex. 60, 344 S.W.2d 426, 429 (1961). Nonetheless, appellate courts can and do take judicial notice of facts not in evidence before the trial court if the facts deprive the appellate court of jurisdiction, for example by mooting an appellate issue. See Meeker v. Tarrant County College Dist., 317 S.W.3d 754, 759, 761–63 (Tex.

App.–Fort Worth 2010, pet. denied) (holding that appeal was moot and stating that "[b]ecause mootness is a matter that ordinarily arises after the rendition of the judgment or order appealed from, we can only determine whether Meeker's appeal is moot by considering evidence of matters occurring subsequent to the trial court's summary judgment order"); City of Shoreacres v. Tex. Comm'n on Environmental Quality, 166 S.W.3d 825, 828–38 & n.2 (Tex. App.–Austin 2005, no pet.) (taking judicial notice of permit issued by United States Army Corps of Engineers and concluding that the permit rendered appeal moot.); Having been supplied with sufficient proof of the issuance of the Second Order—a fact not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned— we take judicial notice of this order. See Tex. R. Evid. 201; Freedom Communications, Inc. v. Coronado, 372 S.W.3d 621, 623 (Tex. 2012).

In the Second Order, the Florida trial court that issued the Green Order states as follows: (1) Petitioner RSL Funding, LLC filed a notice that it was voluntarily dismissing the entire case without prejudice; (2) in its application Petitioner RSL Funding, LLC did not provide the court with a copy of the Green Settlement Agreement; (3) that Settlement Agreement recently came to the court's attention, and the agreement states that the Green Payments are not subject in any manner to alienation, sale, transfer, assignment, pledge, or encumbrance; (3) if a contract at issue contains unambiguous anti-assignment language, the court lacks authority to approve a transfer of structured-settle-

---

tained special exceptions to the FinServ Parties' First Amended Original Petition and their First Supplement to First Amended Original Petition and gave them an opportuni-

ty to cure the defects stated in the Special Exceptions Order. In addition, the trial court struck the Third Amended Petition.

ment-payment rights and an order approving such a transfer is void ab initio; and (4) even though the petitioner dismissed the case, the Green Order is otherwise void.[11] Because the Green Order has been set aside and declared void by the court that issued it, the breach-of-contract claims based on the alleged breach of the Green Order and the Green Letter required by the Green Order are moot. *See Messier v. Messier*, 458 S.W.3d 155, 162–63 (Tex. App.–Houston [14th Dist.] 2015, no pet.). Because we lack jurisdiction over these moot claims and because the trial court lacked jurisdiction over these claims when it rendered final judgment, we vacate the part of the trial court's judgment that addresses these claims and dismiss the FinServ Parties' appeal as to this part of the trial court's judgment. *See Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993); *Meeker*, 317 S.W.3d at 761–63.

#### 4. Breach-of-Contract Claims Based on Failure to Make the Taplette Payment

When the trial court granted summary judgment on the FinServ Parties' breach-of-contract claims, the trial court already had granted the Transamerica Companies' motion seeking a determination that the Transamerica Companies had the right to offset the amount of their judgment against Rapid from the $75,000 owing under the Taplette Order. The trial court previously had granted the motion of Rapid, FinServ, and Capstone for an order that the Transamerica Companies deposit $75,000, the amount of the Taplette Payment, into the trial court's registry for the purposes of the interpleader action. We already have overruled the FinServ Parties' issue challenging the offset summary-judgment motion. On appeal, the FinServ

Parties have not briefed any argument that, even if the trial court did not err in granting the offset summary-judgment motion, the trial court erred in dismissing a breach-of-contract claim for more than the amount of the Taplette Payment that was interpleaded into the trial court and the subject of the setoff. We conclude that there is no reversible error as to the disposition of the breach-of-contract claims regarding the Taplette Payment. *See Villalon v. Galindo*, No. 14–14–00556–CV, 2015 WL 7456023, at *1 (Tex. App.–Houston [14th Dist.] Nov. 24, 2015, no pet.) (mem. op.).

#### 5. Breach-of-Contract Claims Based on Failure to Make the Jones Payments

In the Second Motion, Monumental sought dismissal of the breach-of-contract claims against Monumental based on its alleged breach of the Jones annuity and the Jones Letter by failing to make the Jones Payments. The trial court sustained special exceptions to the prior pleadings based on the failure to specify the contracts allegedly breached and the payments allegedly not made, the failure to allege an agreement allegedly breached other than the Jones Order, and the failure to allege a contract allegedly breached other than the "Transamerica acknowledgment letter."

We review the pleadings de novo and take all allegations, facts, and inferences in the pleadings as true and view them in a light most favorable to the FinServ Parties. *See Natividad*, 875 S.W.2d at 699. Under this standard of review, in the pleadings as to which the special exceptions were granted, the FinServ Parties specified that Monumental allegedly breached the Jones annuity and the Jones

---

11. This order was affirmed on appeal. *See RSL Funding, LLC v. Green*, 162 So.3d 1038, 1038 (Fla. Ct. App. 2015).

Letter, either by itself or in conjunction with the Jones Order, and they alleged an agreement allegedly breached other than the Jones Order and a contract allegedly breached other than the "Transamerica acknowledgment letter." Under applicable law, the FinServ Parties were not required to specify each payment that Monumental allegedly failed to make. *See Phillips v. Vinson Supply Co.*, 581 S.W.2d 789, 791 (Tex. Civ. App.–Houston [14th Dist.] 1979, no writ). Because the trial court erred in sustaining these special exceptions, the trial court also erred to the extent the court granted summary judgment based on the alleged failure to cure these pleading defects. *See James v. Easton*, 368 S.W.3d 799, 804 (Tex. App.–Houston [14th Dist.] 2012, pet. denied). We conclude that the trial court erred to the extent it dismissed the breach-of-contract claims based on the failure to make the Jones Payments ("Jones Contract Claims") because neither the Second Amended Petition nor the Third Amended Petition cured the pleading defects noted in the Special Exceptions Order.

■ In the Second Motion, the Transamerica Parties also asserted that there is no evidence of consideration for any alleged contract on which the FinServ Parties are suing. The burden of proving lack of consideration is on the Transamerica Parties; therefore, this purported no-evidence ground fails as a matter of law. *See* Tex. R. Civ. P.166a(i); *Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex. App.–Tyler 2010, no pet.).

■ The only other ground in the Second Motion that applies to the Jones Contract Claims is that there is no evidence of the existence of a valid contract. The FinServ Parties submitted the Jones annuity, the Jones Order, and the Jones Letter. Under the applicable standard of review, there is a genuine fact issue as to whether a valid contract exists between RSL-3B-IL, Ltd. and Monumental Life Insurance Company as to the Jones Payments. *See M7 Capital, LLC v. Miller*, 312 S.W.3d 214, 220–22 (Tex. App.–Houston [14th Dist.] 2010, pet. denied). There is no genuine fact issue as to whether any of the FinServ Parties other than RSL-3B-IL, Ltd. or any of the Transamerica Parties other than Monumental is a party to a valid contract regarding the Jones Payments. *See D&R Constructors, Inc. v. Texas Gulf Energy, Inc.*, No. 01–15–00604–CV, 2016 WL 4536959, at *13 (Tex. App.–Houston [1st Dist.] Aug. 30, 2016, no pet. h.) (mem. op.).

■ In the Second Motion, the Transamerica Parties noted that they had filed a motion to strike the Third Amended Petition at the same time as they filed the Second Motion. They then stated that "If not stricken, then [the Transamerica Parties] ask summary judgment be granted on all of [the FinServ Parties'] claims as argued in (1) [the First Motion]; and (2) [the Second Motion]." It is not clear whether the "if not stricken" language refers to the Third Amended Petition or some other document. If this language refers to the Third Amended Petition, then this condition did not occur, because the trial court struck the Third Amended Petition. In addition, in this language, the Transamerica Parties do not attempt to incorporate by reference the grounds in the First Motion as if set forth in the Second Motion. Rather, the Transamerica Parties asked that summary judgment be granted as argued in the First Motion. Under binding precedent from the Fourteenth Court of Appeals, this language is not sufficient to expressly present in the Second Motion the summary-judgment grounds contained in the First Motion; therefore, the trial court did not grant summary judgment based on the grounds in the First Motion

when the trial court granted the Second Motion. *See Peine v. HIT Servs., LP*, No. 14-12-00991-CV, 2014 WL 586430, at *2 (Tex. App.–Houston [14th Dist.] Feb. 13, 2014, no pet.) (mem. op.); *Coastal Cement Sand, Inc. v. First Interstate Credit Alliance, Inc.*, 956 S.W.2d 562, 565–66 (Tex. App.–Houston [14th Dist.] 1997, pet. denied).

In the First Motion, Monumental asserted summary-judgment grounds specifically challenging the Jones Contract Claims. Though the trial court did not rule on the First Motion, the FinServ Parties presented this motion to the trial court for ruling. Thus, we may consider one or more of the grounds in the First Motion as a potential basis for affirming the trial court's summary judgment as to the Jones Contract Claims if the Transamerica Parties have presented the ground to this court by a cross-point or cross-issue.[12] *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) (holding that the court of appeals should have considered summary-judgment grounds that the trial court denied and that the appellees presented by a cross-point and stating that courts of appeals may consider grounds not ruled on by the trial court that are likewise preserved for appellate review); *Rodriguez v. Lockhart Contracting Servs., Inc.*, 499 S.W.3d 48, 62–65, 2016 WL 3568039, at *11–12 (Tex. App.–San Antonio Jun. 29, 2016, no pet.) (holding that appellee did not preserve for appellate review summary-judgment grounds presented to but not ruled on by the trial court because appellee did not present these grounds by a cross-point on appeal); *1993 GF P'ship v. Simmons & Co. Intern.*, No. 14-09-00268-CV, 2010 WL 4514277, at *6 (Tex. App.–Houston [14th Dist.] Nov. 9, 2010, no pet.) (stating that, to preserve a summary-judgment ground for appellate review under the *Cates* line of cases, a party need only raise the ground before the trial court and then present the ground in a cross-issue on appeal) (mem. op.); *Reaves v. Lindsay*, 326 S.W.3d 276, 284 (Tex. App.–Houston [1st Dist.] 2010, no pet.) (concluding that appellees preserved summary-judgment ground for appellate review under *Cates* by presenting the ground to the trial court and then presenting the ground on appeal by a cross-point). On appeal, the Transamerica Parties have not presented by a cross-issue or cross-point any ground in the First Motion as a potential basis for affirming the trial court's summary judgment as to the Jones Contract Claims. Nor have the Transamerica Parties briefed any argument that this court should affirm the summary judgment as to the Jones Contract Claims based on a ground in the First Motion. In this context, under the *Cates* line of cases, we may not affirm the summary judgment as to the Jones Contract Claims based on a ground in the First Motion.[13] *See Cates*, 927 S.W.2d at 626; *Rodriguez*, 499 S.W.3d at 62–65, 2016

---

**12.** The Transamerica Parties were not required to file a notice of appeal to present a cross-issue or cross-point in this regard. *See* Tex. R. App. P. 25.1(c); *Rodriguez v. Lockhart Contracting Servs., Inc.*, 499 S.W.3d 48, 62–65, 2016 WL 3568039, at *11–12 (Tex. App.–San Antonio Jun. 29, 2016, no pet.); *1993 GF P'ship v. Simmons & Co. Intern.*, No. 14-09-00268-CV, 2010 WL 4514277, at *6 (Tex. App.–Houston [14th Dist.] Nov. 9, 2010, no pet.) (mem. op.).

**13.** The Transamerica Parties assert that the FinServ Parties did not mention the Jones

annuity in their appellate brief or address the summary-judgment grounds challenging the Jones Contract Claims in the First Motion. Because the trial court did not grant the First Motion, the FinServ Parties did not have to challenge any of the grounds in that motion on appeal, and the grounds in the Second Motion do not focus specifically on the Jones Contract Claim. *See 1993 GF P'ship*, 2010 WL 4514277, at *6 (stating that, to avoid a summary affirmance, appellant must challenge

WL 3568039, at *11–12; *1993 GF P'ship*, 2010 WL 4514277, at *6.

For the foregoing reasons, we may not affirm the summary judgment as to the Jones Contract Claims based upon the grounds in the First Motion. *See Cates*, 927 S.W.2d at 626; *Rodriguez*, 499 S.W.3d at 62–65, 2016 WL 3568039, at *11–12; *Peine*, 2014 WL 586430, at *2; *1993 GF P'ship*, 2010 WL 4514277, at *6; *Coastal Cement Sand, Inc.*, 956 S.W.2d at 565–66.

In their appellate brief, the Transamerica Parties also invoke the *Cates* line of cases and ask this court to affirm the trial court's summary judgment as to the FinServ Parties' breach-of-contract claims based on summary-judgment grounds contained in parts of seven different motions that the trial court either denied or on which the trial court did not rule. The Transamerica Parties assert that the FinServ Parties have failed to carry their burden to show error in the trial court's summary judgment by challenging all of these summary-judgment grounds. Because the trial court did not grant summary judgment on these grounds, the FinServ Parties did not have to challenge any of the grounds in their appellate briefing. *See 1993 GF P'ship*, 2010 WL 4514277, at *6 (stating that, to avoid a summary affirmance, the appellant must challenge each independent ground on which the trial court's summary judgment was based). To assert these grounds as an alternate basis for affirming the trial court's summary judgment, the Transamerica Parties must present the grounds to this court by a cross-point or cross-issue.[14] *See Cates*, 927 S.W.2d at 626; *Rodriguez*, 499 S.W.3d at 62–65, 2016 WL 3568039, at *11–12; *1993 GF P'ship*, 2010 WL 4514277, at *6. The Transamerica Parties have not presented any of these grounds by a cross-issue or cross-point, nor have the Transamerica Parties briefed any argument showing entitlement to summary judgment on any of these grounds.[15] Therefore, we may not affirm the summary judgment as to the Jones Contract Claims based on any of these grounds from the seven cited motions. *See Cates*, 927 S.W.2d at 626; *Rodriguez*, 499 S.W.3d at 62–65, 2016 WL 3568039, at *11–12; *1993 GF P'ship*, 2010 WL 4514277, at *6.

For the reasons stated above, as to the breach-of-contract claims, the trial court erred in granting summary judgment only as to the breach-of-contract claims by RSL-3B-IL, Ltd. against Monumental Life Insurance Company based on the Jones Payments. Accordingly, we sustain the third issue to the extent the FinServ Parties assert that the trial court erred in granting summary judgment as to the Jones Contract Claims. We overrule the remainder of the third issue, except to the extent that the issue is moot because it covers the breach-of-contract claims based on the alleged breach of the Green Order and the Green Letter.

## III. CONCLUSION

Under this court's precedent, the trial court did not abuse its discretion in striking the Third Amended Petition. The Fin-

---

each independent ground on which the trial court's summary judgment was based).

14. The Transamerica Parties were not required to file a notice of appeal to present a cross-issue or cross-point as to these grounds. *See* Tex. R. App. P. 25.1(c); *Rodriguez*, 499 S.W.3d at 62–65, 2016 WL 3568039, at *11–12; *1993 GF P'ship*, 2010 WL 4514277, at *6.

15. The Transamerica Parties cite to the motions, and sometimes to the responses to the motions and the trial court's order denying the motion, but the Transamerica Parties do not brief any argument showing that they were entitled to summary judgment based on any of these grounds.

Serv Parties have not shown that the trial court erred in granting the Transamerica Companies' summary-judgment motion on their offset claim.

Because the breach-of-contract claims based on the alleged breach of the Green Order and the Green Letter are moot, we vacate the part of the trial court's judgment that addresses these claims and dismiss the FinServ Parties' appeal as to this part of the trial court's judgment.

The trial court did not err in determining that that it would award the Transamerica Parties reasonable and necessary attorney's fees under the Declaratory Judgments Act before any fact findings by the jury as to the amount of these fees and then by then awarding the fees found by the jury and thus impliedly finding that this award is equitable and just.

The trial court erred in awarding the Transamerica Parties $25,000 as reasonable and necessary attorney's fees for the prosecution of the interpleader action and in granting summary judgment and as to the breach-of-contract claims by RSL-3B-IL, Ltd. against Monumental Life Insurance Company based on the Jones Payments.

On appeal, we have not concluded that the trial court erred in granting or denying any declaratory relief. We have concluded that the trial court erred in awarding the Transamerica Parties attorney's fees for the prosecution of the interpleader action, but Monumental did not interplead any funds or prosecute the interpleader action. Out of the many claims the trial court disposed of on summary judgment, we have concluded that the trial court

erred in granting summary judgment only as to the Jones Contract Claims. The relief we grant in this appeal does not substantially affect the trial court's judgment so as to warrant a reversal and remand as to the trial court's awards of attorney's fees under the Declaratory Judgments Act. *See Allstate Cnty. Mut. Ins. Co. v. Wootton*, 494 S.W.3d 825, 839 (Tex. App.–Houston [14th Dist.] Mar. 29, 2016, pet. filed); *Berryman's South Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 202, n.13 (Tex. App.–Dallas 2013, pet. denied). Accordingly, we sever, reverse, and remand as to the breach-of-contract claims by RSL-3B-IL, Ltd. against Monumental Life Insurance Company based on the Jones Payments, modify the remainder of the judgment to delete the award of reasonable and necessary attorney's fees for the prosecution of the interpleader action, and affirm as modified.[16]

---

16. The trial court ordered the amount of interpleaded funds that the Transamerica Companies received under the trial court's September 24, 2014 order to be recorded as a credit against the interpleader attorney's fees awarded in the final judgment. Because this court has reversed the trial court's award of interpleader attorney's fees, the amount of interpleaded funds that the Transamerica Companies received under the September 24, 2014 order should be recorded as a credit against the judgment that we affirm as modified in this appeal.